FORD MOTOR CO. *v.* CITY OF DETROIT.

1. Contracts—Acceptance—Equity—Title.

   After construction of water tunnel by private party under contract with city and use thereof for purpose constructed, city may not avoid vesting of title to the property in it as provided in the contract by failure to make formal acceptance pursuant thereto as equity regards as done that which ought to have been done.

2. Taxation—Water Tunnel and Intake—Title.

   No legal tax may be levied on water tunnel and intake constructed by private party for city pursuant to contract between them vesting latter with title to such structures upon land of former.

3. Appeal and Error—Defense of Ultra Vires—Pleading.

   Defense of *ultra vires* may not be considered on appeal where not raised in any pleading and cause will not be remanded for special pleading thereof where record does not warrant such action (Court Rule No. 23, § 3 [1933]).

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted April 12, 1934. (Docket No. 88, Calendar No. 37,719.) Decided June 4, 1934.

Bill by Ford Motor Company, a Delaware corporation, against City of Detroit, a municipal corporation, and others to declare certain tax assessments void. Decree for plaintiff. Defendants appeal. Affirmed.

*Bodman, Longley, Bogle, Middleton & Farley* (*Louis J. Colombo,* of counsel), for plaintiff.

*Raymond J. Kelly* and *Paul T. Dwyer,* for defendants.

NELSON SHARPE, C. J.   The plaintiff, under an agreement entered into with the city of Detroit, acting through its board of water commissioners and confirmed by its common council, for one dollar and other consideration, agreed to construct a 15-foot tunnel from its power plant on the River Rouge to a point south of Jefferson avenue in the city; to erect an intake thereon at that point on land owned by the plaintiff, and to dredge out the "old channel" therefrom to the Detroit river.   Its purpose was to secure a supply of water for its manufacturing plant in Dearborn.   The third paragraph thereof reads as follows:

"The title to all of the structures covered by this agreement from the point where such tunnel enters the property of the Ford Motor Company on Miller road to and including the intake at the river shall vest perpetually, and without reversionary rights to the Ford Motor Company, in the city of Detroit."

On March 31, 1931, after the tunnel had been constructed and the intake erected, the board of assessors of the city assessed the land on which the intake was erected at the sum of $57,770 and the intake structure, described as "screenhouse and superstructure," at $700,000 to the plaintiff as owner.   It revised this assessment on April 11, 1931, by placing the same value on the land and a valuation of $2,000,000 on "screenhouse, superstructure and water tunnel."

It is conceded that while the roll was in the hands of the assessors the plaintiff made complaint that the assessment of the intake, described as above, and of the water tunnel to it was illegal and void as they were not the property of the plaintiff.   The assessment roll was submitted to the common council for action thereon pursuant to the charter of the city.

The plaintiff filed with it a petition asking an adjustment for the reason that the property was illegally and erroneously assessed.   Thereupon the council caused the roll to be changed so that the following assessments appeared thereon:

"(a)   Real property:
        Land located on private claim 45 in the city of Detroit, as described hereinabove.........$653,190.

"(b)   Personal property:
        Water tunnel under public highways and as described hereinabove ...............$900,000."

It is conceded that the records show that $51,990 of the real property assessment was placed on the land itself and the balance of $601,200 on the structure erected thereon.   The assessment on the water tunnel was made on that portion of it located within the city of Detroit.

The roll was returned to the assessors, who spread a city tax of $14,787.18 on the real property and a city tax of $20,374.56 on the personalty.   State and county taxes were afterwards spread thereon.   The plaintiff sent checks to the city treasurer for the amounts of the taxes which were assessable against the land owned by it on which the intake or screenhouse was erected on the valuation of $51,990 placed thereon by the common council, but they were returned to it.   It then filed the bill of complaint herein, setting up the facts as stated, and prayed that the assessment and levy of the taxes be vacated and the defendants enjoined from enforcing their collection.

The answers of the defendants were, in effect, admissions of the facts stated in the bill and denials that the assessments were erroneous.

The trial court held the assessment to be illegal and void, and set aside the taxes thereon, except as to the taxes which might have been spread upon the valuation placed upon the land of plaintiff on which the intake had been erected, and for which payment had been tendered, and ordered plaintiff to pay the same within 20 days from the date of the decree. The defendants have appealed.

In its opinion it stated the issue to be:

"The entire facts may be boiled down as to ownership of the screenhouse, superstructure and water tunnel, in fact, a construction of the formal contract entered into between the plaintiff on the one hand and the city on the other, with respect to the building of the tunnel and the necessary structures to carry out the intent of the parties."

Defendants' counsel insist that as it is conceded that there was no acceptance of the work by the city engineer when completed, as provided for in the contract for its construction, the title thereto remained in the plaintiff. In answer to this the trial court said:

"I feel that the minute the water was turned into this tunnel and transported to the plant of the plaintiff company it was tantamount to an acceptance of this structure by the city. At least, it may properly be said that this being a case founded in the equity side of the court, that equity regards that done which ought to have been done. I do not feel that the city could sit back, although the tunnel was being used for the very purpose designated in the formal contract, and because it had not placed its seal on the final results, could say the property belonged to anyone but itself."

In this we think he was clearly right. It might also be said that under the terms of the contract the

plaintiff was constructing the tunnel and the intake for the city, and not for itself. It at no time had title thereto. The inspection and acceptance would but evidence the fact that the plaintiff had fully performed its contract. It is conceded that the construction had been completed and that the plaintiff was using the tunnel and intake at the time the assessment was made. Clearly, under the provision in the contract quoted above, the title thereto rested in the defendant city and no legal tax thereon could be levied against the plaintiff.

Counsel for defendants in their brief claim that the contract was *ultra vires.* This defense was not raised in any of the answers filed, and may not now be considered by us. It is an affirmative defense, and must have been pleaded. Court Rule No. 23, § 3 (1933); *Duluth, South Shore & Atlantic R. Co.* v. *Wilson,* 200 Mich. 313 (L. R. A. 1918E, 763).

In a brief filed in this court after the case was submitted, counsel for the defendants ask that the cause be referred back to the circuit court for the purpose of permitting this defense to be specially pleaded. The record does not warrant such action on our part.

The decree is affirmed. As a public question is involved, no costs will be allowed.

Potter, North, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.