WAYNE VILLAGE PRESIDENT *v.* WAYNE VILLAGE CLERK.

1. MUNICIPAL CORPORATIONS—PARKING FACILITIES—HIGHWAYS AND STREETS.

   Parking facilities designed to relieve congested street conditions resulting from the use of motor vehicles in a municipality have a definite bearing on public safety in the use of public streets therein.

2. SAME—PARKING—REGULATION—FEES.

   Parking of vehicles in a street in a municipality is a privilege, subject to regulation by the proper authorities, for which a fee may be charged to meet the cost of regulation.

3. SAME—PARKING ON A STREET—PRIVILEGES.

   The parking of vehicles in a municipality's streets is a privilege and not an absolute right.

4. HIGHWAYS AND STREETS—PRIMARY PURPOSE.

   Highways and streets are intended primarily for travel and not for the storage of vehicles other than by way of transitory stops for loading and unloading.

5. SAME—PARKING—REGULATION—POLICE POWER.

   Parking vehicles on a highway is a proper use of the highway but is subject to regulation under the police power and, in the absence of an abuse of such power, the courts should not interfere therewith.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 25 Am. Jur., Highways, §§ 182, 184.

[6] 37, 38 Am. Jur., Municipal Corporations, §§ 136, 484.

[7] 11 Am. Jur., Constitutional Law, § 74.

[8] 43 Am. Jur., Public Securities and Obligations, §§ 59, 285.

[9, 10] 43 Am. Jur., Public Securities and Obligations, § 77.

[11] 11 Am. Jur., Constitutional Law, §§ 185, 201.

[12] 43 Am. Jur., Public Securities and Obligations, §§ 285–288.

[13] 14 Am. Jur., Costs, §§ 23, 91.

6. MUNICIPAL CORPORATIONS—OFF-STREET PARKING SPACE—PUBLIC SAFETY.

The expenditure of public funds by a municipality to acquire off-street land for parking vehicles is a legitimate public purpose involving public safety.

7. CONSTITUTIONAL LAW—PUBLIC SAFETY—MUNICIPAL CORPORATIONS —STATUTES.

The constitutional provision authorizing any city or village to acquire, own, establish and maintain all works which involve the public health or safety is not self-executing but requires legislative action to give it effect (Const. 1908, art. 8, § 22).

8. MUNICIPAL CORPORATIONS—AUTOMOBILE PARKING FACILITY—REVENUE BOND ACT.

An automobile parking facility, combining parking facilities both on public streets and on off-street property of a municipality, for which a charge for use is made, is a public use and a work involving the public safety that may be acquired by a home-rule village under the revenue bond act irrespective of whether or not such parking facilities be considered a public utility or an internal improvement (Const. 1908, art. 8, §§ 22–25, 29; art. 10, § 14; Act No. 94, §§ 3, 4, Pub. Acts 1933, as amended).

9. SAME—AUTOMOBILE PARKING FACILITY—REVENUE BOND ACT—RECEIVERS.

Since there may be no default or taking of the property of an automobile parking facility for which bonds are issued under the revenue bond act authorizing the appointment of a receiver in case of such default, no franchise approved by the electors is required as a part of the security of the bondholders (Const. 1908, art. 8, §§ 22–25, 29; Act No. 94, §§ 3, 4, 10, Pub. Acts 1933, as amended).

10. SAME—AUTOMOBILE PARKING FACILITY—PUBLIC UTILITY—FRANCHISES—BONDS.

A municipal automobile parking facility is not a public utility, hence provisions of the Constitution pertaining to the granting of a franchise do not apply so as to require approval by municipal electors before issuance of bonds under revenue bond act (Const. 1908, art. 8, §§ 22–25; Act No. 94, §§ 3, 4, 10, Pub. Acts 1933, as amended).

11. Constitutional Law—Division of Powers—Courts—Administrative Powers—Receivers.

The duties of a receiver whose appointment is authorized by the revenue bond act are not imposed upon the court, or the judge thereof, but upon the receiver, hence there is not an unconstitutional delegation of administrative duties upon courts (Const. 1908, art. 4, § 2; Act No. 94, Pub. Acts 1933, as amended).

12. Municipal Corporations—Automobile Parking Facility—Off-Street Property—Revenue Bonds—Net Revenues of Entire System.

A municipality has the power to pledge the net revenues from all meters of a municipal automobile parking facility, combining parking facilities both on public streets and on off-street property of a municipality, for the acquisition of off-street property and the operation and maintenance thereof as a part of the system and issue revenue bonds payable solely out of the net revenue derived from operation of such system (Const. 1908, art. 8, §§ 22-25, 29; Act No. 94, Pub. Acts 1933, as amended).

13. Costs—Public Question—Construction of Revenue Bond Act—Automobile Parking Facility.

No costs are allowed in mandamus proceeding to compel a home-rule village clerk to countersign revenue bonds for the acquisition of an automobile parking facility for both on- and off-street parking, public questions being involved (Const. 1908, art. 8, §§ 22-25, 29; Act No. 94, Pub. Acts 1933, as amended).

Mandamus by Wayne Village President and others against Wayne Village Clerk to compel him to sign revenue bonds. Submitted November 19, 1948. (Calendar No. 44,246.) Writ granted February 28, 1949.

*Charles B. Cozadd,* Village Attorney (*Miller, Canfield, Paddock & Stone,* of counsel), for plaintiffs.

*Fred B. Hill,* for defendant.

*Amici curiae:*

*William M. Laird,* City Attorney, for City of Ann Arbor.

*Raymond J. Kelly,* Corporation Counsel, *John H. Witherspoon* and *Helen W. Miller,* Assistants Corporation Counsel, for City of Detroit.

*John M. Dunham,* City Attorney, for City of Grand Rapids.

Boyles, J. Plaintiffs are the president and members of the council of the village of Wayne, a homerule village in Wayne county. The defendant is the village clerk. The village owns and operates on-street parking meters in the business district, and also owns a parcel of land in which it proposes to install parking meters and to operate the same as a parking lot. Under an ordinance and some amendments adopted in 1948 the village proposes to combine all automobile parking facilities, both on-street and off-street, into one single system, under the supervision and control of the village council. The ordinance provides for the issuing of revenue bonds payable solely out of revenues to be derived from the operation of said system, to defray the expense of acquiring and constructing parking facilities, installing meters on village-owned property and other expense incident to installing and operating said combined off-street and on-street parking system.

One provision in the ordinance requires that said revenue bonds and the interest coupons be signed by the president of the village and countersigned by the village clerk. The State municipal finance commission has authorized the issuance of the proposed bonds in this case, and approved the form of the notice of sale; and the village has advertised said bonds for sale in accordance therewith. The village clerk,

representing that some questions had been raised as to the validity of said ordinance and the legality of said bonds, was prevailed upon to refuse to countersign the same, whereby plaintiffs filed the instant petition in this Court for a writ of mandamus to compel the clerk to countersign. We allowed the issuance of an order to show cause to bring the disputed questions of validity here for consideration.

The factual background is established by the allegations in the petition for the writ, all of which were admitted as true in the answer filed by the defendant.

The village of Wayne has a concentrated business section and a major parking problem therein by reason of the lack of adequate parking space, both on the street and off the street; said lack of adequate downtown parking space creates great congestion upon the public streets of the village, resulting in a traffic condition on said streets which is a menace to the public safety; said village heretofore provided by ordinance for the placing of parking meters on its principal downtown streets, which ordinance requires the deposit in said meters of certain fees for parking in the space adjacent to said meters. The village council in the ordinance now here for consideration has declared it necessary for the public safety and welfare of said village to supplement and facilitate the regulation and control of all parking in the downtown area, and to alleviate the traffic congestion prevalent therein by acquiring and constructing a large off-street downtown parking lot, and by combining all municipal parking facilities, both on-street and off-street, into one unified system to be operated as a separate municipal system. All revenues received from use of such combined parking facilities are to be separately accounted for and specifically earmarked for operation and maintenance thereof, for paying the cost of acquiring the parking lot herein referred to and additional parking meters, lots or

facilities, and also to pay a small balance due on certain street parking meters heretofore installed.

The first four questions raised and discussed in the briefs may be combined as follows:

Under the circumstances of this case, is a municipal parking system consisting of a combination of on-street and off-street automobile parking facilities, for the use of which a charge is made, a public improvement within the' meaning of the revenue bond act* for which revenue bonds, payable solely out of the revenue derived from the operation of said system, may legally be issued by a municipality? Inseparably connected with said question is whether the village has power to pledge itself to acquire said facilities and maintain the same, with sufficient rates to be charged for the use thereof, until said bonds shall be retired—in this instance fixed at less than 12 years.

Article 8, § 22, of the Michigan Constitution (1908), provides:

"Any city or village may acquire, own, establish and maintain, either within or without its corporate limits, parks, boulevards, cemeteries, hospitals, almshouses and all works which involve the public health or safety."

Parking facilities designed to relieve congested street conditions resulting from the use of motor vehicles in streets which obviously were not originally laid out to cope with present-day motor vehicle traffic have a definite bearing on public safety in the use of public streets. A broad approach to the problem was announced by this Court in *Bowers* v. *City of Muskegon*, 305 Mich. 676, 680, wherein we upheld the validity of a city parking meter ordinance impos-

---

* Act No. 94, Pub. Acts 1933, as last amended by Act No. 204, Pub. Acts 1947 (1 Comp. Laws 1948, § 141.101 *et seq.* [Stat. Ann. 1949 Rev. §§ 5.2731-5.2766(2)]).

ing fees for the use of particular space on a street for a designated period of time:

"We have in mind that we are now living in a modern age; that the traffic problems are a result of our present mode of living; that cities have spent untold dollars in the construction of elevated roads, subways and parkways to take automobile traffic out of congested areas; and that any city with a population equal to that of Muskegon has its own peculiar traffic problems. We also have in mind that Const. 1908, art. 8, § 28, provides:

" 'The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships.' * * *

"It must be assumed that parking in a city street is a privilege and subject to regulation by the proper authorities of the city entailing upon the city additional expenses in order that there may be proper supervision and regulation. If parking is a privilege and not an absolute right, the power to regulate implies the power to exact a fee for the cost of such regulation."

The supreme court of Pennsylvania has expressed a similar viewpoint in apt language. In a case upholding the constitutionality of a statute authorizing the establishing of parking facilities for cities, the court said:

"The attack on the constitutionality of the statute is based almost entirely on the contention that the purpose for which the authority is created does not constitute a *public* use. * * * But a legislative declaration with respect to that question, while not conclusive, is entitled to a prima facie acceptance of its correctness. * * * Not only is the declaration of legislative findings in the present act impressive in pointing out the urgent need of legislation of this type, but the conditions it portrays are well known to all inhabitants of our larger cities. It is unfor-

tunate that many operators of automobiles habitually ignore the fact that highways are intended primarily for travel and not for the storage of vehicles other than by way of transitory stops for loading and unloading. The congestion caused by such misuse of the streets and by the ever-increasing amount of motor vehicle traffic has become a major problem of municipal administration. * * * The widespread need of legislation to furnish such aid can be gleaned from the fact that in 1946 alone 65 cities opened new parking lots, and, by 1945, 22 States and the District of Columbia had enacted laws in some form dealing with parking facilities.

"Those attacking the constitutionality of such a law as that which is here under consideration obviously labor under the mistaken notion that its purpose is merely to cater to the convenience of the owners and operators of motor vehicles; on the contrary its effect may be to interfere with the perhaps greater convenience of parking on the public streets; its real purpose is to promote the larger and more general good of the community by freeing the streets of the impediments and perils arising from dangerous and often intolerable conditions of traffic congestion. And since the act is concerned with the regulation of the transportation of persons and property along the highways of the municipality, and since the evils it seeks to remedy vitally affect conditions for the transaction of business, the prevention of accidents, the effective operations of fire and police forces, and, in general, the enjoyment of many phases of city life and activities, its justification stems directly from the exercise of the police power, which is the supreme power of government." *McSorley* v. *Fitzgerald,* 359 Pa. 264 (59 Atl. [2d] 142).

This Court, in *Re Widening of Fulton Street,* 248 Mich. 13 (64 A. L. R. 1507), concluded that the city of Grand Rapids could expend public funds in widening the street to provide parking space. The Court, at page 17, said:

"The demand of our motor age has greatly increased the necessity for space in the public streets for leaving vehicles. This right is of importance to the tradesmen along the street as well as to the traveler thereon. One would hardly have the temerity to question that such a use is a lawful use of the highway. Its regulation is a matter for the exercise of police power, with which, in the absence of abuse, courts should not interfere. In the future, this space which the city seeks to add to Fulton street may or may not be used for parking. The land was taken 'for street purposes.' But parking is a proper use of the highway, and if necessity therefor exists, the right of eminent domain may be exercised to establish or widen highways adequate for this purpose. The taking of the land for highways is not limited to that necessary for actual travel."

Obviously, unless the expenditure of public funds to widen a highway for parking purposes is proper, this Court would have been compelled to find the eminent domain proceedings invalid. The Fulton Street decision is a sufficient answer to the question whether an expenditure of public funds to acquire off-street land for parking is a legitimate public purpose involving public safety. In effect, such a conclusion was reached in the *Fulton Street Case* when the Court held (syllabi):

"Regulation of use of highways for parking vehicles is matter for exercise of police power, with which, in absence of abuse, courts should not interfere.

"Use of highways for parking vehicles is proper, and if necessity therefor exists, right of eminent domain may be exercised to establish or widen highways adequate for this purpose; taking of land for highways not being limited to that necessary for actual travel."

This Court has held that the constitutional provi-

sion authorizing any city or village to acquire, own, establish and maintain all works which involve the public health or safety is not self-executing. It requires legislative action to give it effect. *City of Detroit* v. *Oakland Circuit Judge*, 237 Mich. 446; *Sault Ste. Marie City Commission* v. *Sault Ste. Marie City Attorney*, 313 Mich. 644.

Such legislation was enacted in 1946 by an amendment to the revenue bond act of 1933. The authority for cities and villages to acquire, establish and maintain automobile parking facilities was there implemented by the legislature as follows:[*]

"Sec. 3.   *   *   *

"(b) The term 'public improvements' is hereby defined as and limited to the following improvements: *   *   * automobile parking facilities; *   *   * parks; *   *   *.

"Sec. 4. Any public corporation is authorized to purchase, acquire, construct, improve, enlarge, extend and/or repair one or more public improvements and to own, operate and maintain the same, within and/or without its corporate limits, and to furnish the services, facilities and commodities of any such public improvement to users within and/or without its corporate limits."

In considering whether Wayne village is authorized to acquire, construct, own and operate *off-street* parking facilities, it is important to note that the above statute authorizes this to be done outside of, as well as within, the corporate limits. Such facilities, located outside the corporate limits, would of necessity be off-street facilities, inasmuch as the municipality does not own or control any streets except those which are within the corporate limits.

In the above connection this Court has recently held that the Constitution (1908), art. 8, § 22, in au-

---

[*] Act No. 23, Pub. Acts 1946 (1st Ex. Sess.) (See 1 Comp. Laws 1948, §§ 141.103, 141.104 [Stat. Ann. 1949 Rev. §§ 5.2733, 5.2734]).

thorizing cities and villages to acquire, own, establish and maintain * * * parks, and all works which involve the public health or safety, *either within or without* its corporate limits, is sufficiently broad to allow one village to acquire and maintain a park, even within the corporate limits of another village and without its consent. *Village of St. Clair Shores* v. *Village of Grosse Pointe Woods,* 319 Mich. 372. If a village may thus acquire a park outside its corporate limits, the conclusion is inescapable that it may similarly acquire an automobile parking facility, a work involving the public safety.

Since the advent of the motor vehicle, the legislature has otherwise recognized the changing conditions in regard to traffic problems confronting State and municipal authorities. In addition to the revenue bond act the legislature has authorized home-rule cities to provide for acquiring and maintaining facilities, including land, for storing and parking of vehicles and collecting charges for use thereof (1 Comp. Laws 1929, § 2238* [Stat. Ann. 1949 Rev. § 5.2081]); it has provided for county road commissions and the State highway commissioner to acquire property for the location and development of off-street parking "to facilitate the flow of traffic" in certain areas (1 Comp. Laws 1929, § 3884, as amended by Act No. 21, Pub. Acts 1942 [2d Ex. Sess.],† [Comp. Laws Supp. 1945, § 3884, Stat. Ann. 1947 Cum. Supp. § 8.171]); and it has authorized county boards of supervisors to establish and maintain parking lots on lands owned by the county and regulate the operation thereof (Act No. 58, Pub. Acts, 1945 ‡ [Comp. Laws Supp. 1945, § 1130–11, Stat. Ann. 1947 Cum. Supp. § 5.406]).

We conclude that the power of the plaintiff village

---

* 1 Comp. Laws 1948, § 117.4b.—Reporter.
† 2 Comp. Laws 1948, § 213.171.—Reporter.
‡ 1 Comp. Laws 1948, § 46.201.—Reporter.

to acquire, own, establish and maintain a municipal automobile parking system has both constitutional and statutory authority. In that connection, it matters not whether such parking facilities be considered a public utility within the meaning of article 8, § 23, or an internal improvement under article 10, § 14, of the Constitution. *Young* v. *City of Ann Arbor,* 267 Mich. 241. See, also, *Gilbert* v. *City of Traverse City,* 267 Mich. 257.

The ordinance also provides for the appointment of a receiver, "to administer and operate said system on behalf of the village, and under the direction of said court, and by and with approval of said court, to perform all of the duties of the officers or agencies of said village more particularly set forth herein and in Act No. 94, Pub. Acts 1933, as amended."

The fifth and final question raised by the defendant for refusing to countersign the bonds is as follows: .

"Does the provision of Act No. 94, Pub. Acts 1933, authorizing the appointment of a receiver to administer and operate such parking facilities and to fix rates for the use thereof under the direction of the court violate the Constitution of the State of Michigan in granting a public utility franchise without a vote of the electors and in imposing administrative duties on the courts?"

Defendant's fifth objection has two separate questions: (1) Is the ordinance or the revenue bond act unconstitutional because it would grant to the receiver (or the bondholders) a public utility franchise without a vote of the electors; and (2) does it impose administrative duties on the courts?

The provision in the revenue bond act above referred to *(Stat. Ann. 1949 Rev. § 5.2740) is as follows:

---

* 1 Comp. Laws 1948, § 141.110.—REPORTER.

"Sec. 10. If there be any default in the payment of the principal of or interest upon any of said bonds, any court having jurisdiction in any proper action may appoint a receiver to administer and operate on behalf of the borrower, under the direction of said court, any public improvement the revenues of which are pledged to the payment of such principal and interest; and by and with the approval of said court, to fix and charge rates and collect revenues sufficient to provide for the payment of any bonds or other obligations outstanding against the revenues of said public improvement and for the payment of the expenses of operating and maintaining the same and to apply the income and revenues of said public improvement in conformity with this act and the ordinance providing for the issuance of such bonds and in accordance with such orders as the court shall make."

The first question raised by the defendant in his fifth objection to countersigning the bonds has been answered by this Court in *Young* v. *City of Ann Arbor, supra.* That case was decided in 1934, under the original bond act as passed in 1933. That act contained the same authority as it now does for the appointment of a receiver in case of default, *to administer and operate* the system on behalf of the borrower, under the direction of the court, and fix rates and charge revenues sufficient to provide for payment of the bonds. In the *Young Case* we were asked to answer the following question:

"Does said Act No. 94 create and confer a franchise contrary to article 8, §§ 25 and 29 of the Michigan Constitution, in respect to authorizing a receiver to administer and operate such project?"

The Court held:

"No franchise is required under Act No. 94, Pub. Acts 1933, because there may be no foreclosure, no taking of property, and no operation thereof by

the bondholders; who may not acquire title thereto by foreclosure, and hence no franchise is necessary to be granted as a part of the security of the bondholders."

. An automobile parking system is not a public utility, and article 8, §§ 23, 24 and 25 of the Constitution (1908) do not apply. The appointment of a receiver does not involve a public utility, there being none; nor does it involve a public utility franchise, which is not required. *Ritchie . v. Council of the City of Harrisville,* 291 Mich. 415 (32 P. U. R. [N. S.] 254); *Holland* v. *Clerk of Garden City,* 299 Mich. 465; *Hays* v. *City of Kalamazoo,* 316 Mich. 443 (169 A. L. R. 1218); *Gentzler* v. *Constantine Village Clerk,* 320 Mich. 394.

The final objection of the defendant to the ordinance is that it imposes administrative duties on the courts. The answer is obvious. The duties which are involved in the receivership are not duties imposed upon the court, or the judge of the court. They are duties imposed upon the receiver. In that respect the situation is entirely different than that shown in *Local 170, Transport Workers Union of America* v. *Genesee Circuit Judge,* 322 Mich. 332. Nor do the duties of the receiver necessarily infringe upon the police power of the village in the exercise of such power over both on-street and off-street parking. See *Village of St. Clair Shores* v. *Village of Grosse Pointe Woods, supra.*

The provision in the revenue bond act for the appointment of a receiver does not offend the Constitution by imposing administrative duties on the courts.\*

As to the objections to the legality of the ordinance here involved and here raised by the defendant, we conclude that a municipal parking system

---

\* See Const. 1908, art. 4, § 2.—REPORTER.

combining parking facilities both on public streets and on off-street property of a municipality, for which a charge for use is made, is a public use, and a public improvement within the meaning of the revenue bond act; that the acquisition and operation of such system by a municipality is not forbidden by the Michigan Constitution; that a municipality has the power to pledge the net revenues therefrom for the acquisition of off-street property and the operation and maintenance thereof as a part of such system; that the municipality has the power to issue revenue bonds payable solely out of the net revenues derived from the operation of such system, and to pledge such net revenues for payment of such bonds; and that the municipality has the power to pledge itself to acquire and maintain parking meters on such street and off-street property, and charge rates for the use of such facilities to provide for the payment of such bonds.

If necessary, the writ may issue directing the defendant to countersign the revenue bonds here involved. No costs, public questions being involved.

SHARPE, C. J., and BUSHNELL, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.