STOLOROW *v.* CITY OF PONTIAC.

1. MUNICIPAL CORPORATIONS—APPROPRIATION ORDINANCES—AMENDMENT—REFERENDUM.

Neither an appropriation ordinance of a home-rule city, as originally passed, nor the same ordinance as amended, is subject to referendum as the pertinent statute requires each city charter to provide for an annual appropriation of money for municipal purposes and charter in so providing authorized passage of an annual appropriation ordinance and *permitted* amendment thereof by a vote of 5 members of the commission at a meeting held after a 1-week's published notice (CL 1948, § 117.1 *et seq.;* Pontiac City Charter, chap 7, § 4, chap 9, § 8).

2. SAME—REQUIRED APPROPRIATION ORDINANCE—AMENDMENT—REFERENDUM.

An amended appropriation ordinance of home-rule city is required by law and its charter in the same sense as the original appropriation ordinance and, as such, is not subject to charter referendum provisions (CL 1948, § 117.1 *et seq.;* Pontiac City Charter, chap 7, § 4, chap 9, § 8).

3. SAME—OFF-STREET PARKING LOTS—PUBLIC SAFETY—POLICE POWER—CONSTITUTIONAL LAW.

The municipal operation of off-street parking lots has a definite bearing on public safety in the use of public streets and, as such, constitutes the lawful exercise of police powers and powers expressly conferred upon cities by the Constitution (Const 1908, art 8, § 22; CL 1948, § 141.161 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 37 Am Jur, Municipal Corporations § 210.
[1, 2, 4] Character or subject matter of ordinance within operation of initiative and referendum provisions. 122 ALR 769.
[3, 7] 37 Am Jur, Municipal Corporations § 136.
[3, 7] Municipal establishment or operation of off-street public parking facilities. 8 ALR2d 373.
[5, 6] 37 Am Jur, Municipal Corporations §§ 144, 155.
[8] 14 Am Jur, Costs § 23.

4. SAME—ORDINANCES—CHARTERS—STATUTES.

Proposed ordinance sought by initiatory petition whereby home-rule city would be prohibited from expending, disbursing or committing any funds of the city for purposes expressly authorized by both charter and State law would be void and of no legal effect (Const 1908, art 8, § 22; CL 1948, § 141.161 *et seq.*; Pontiac Charter, chap 2, § 1; Proposed Ordinance Prohibiting Acquisition and Development of Off-street Parking Facilities).

5. SAME—APPROPRIATIONS—BUDGET—CHARTER—PARKING LOTS.

Appropriation ordinance which, as amended, included an item for purchase and maintenance of public parking lots was legally adopted by home-rule city whose charter required appropriations to be for purpose set forth in annual budget or an approved amendment thereto, where record discloses that budget was amended to provide for said parking lots coincident with adoption of such amendment to the appropriation ordinance (Pontiac Ordinances Nos 1202, 1205).

6. SAME—AMENDED APPROPRIATION ORDINANCES—CHARTERS—PARKING LOTS.

An additional item of appropriation for municipally-owned parking lots, included in appropriation ordinance of home-rule city, by way of amendment after compliance with charter provisions as to public notice and hearing and pursuant to other charter provisions permitting such amendment was a valid appropriation for such purpose, where within the estimated and available tax revenue for the then current year (Pontiac Ordinances Nos 1202, 1215).

7. SAME—APPROPRIATIONS—ESTIMATED PARKING METER REVENUES—HOME-RULE CITIES.

Home-rule city's appropriation of estimated income from parking meters for fiscal year was not improper by reason of using such meters as a revenue-producing device, where home-rule city is authorized by both State law and charter to acquire and operate public parking facilities (CL 1948, § 141.161 *et seq.*; Pontiac Charter, chap 2, §-1; Pontiac Ordinances Nos 1202, 1215).

8. COSTS—PUBLIC QUESTION—OFF-STREET PARKING FACILITIES.

No costs are allowed in suit to enjoin city from expending funds to acquire off-street parking facilities, a public question being involved.

Appeal from Oakland; Doty (Frank L.) and Holland (H. Russel), JJ. Submitted January 12, 1954. (Docket No. 54, Calendar No. 46,044). Decided April 5, 1954.

Bill by Sam L. Stolorow, doing business as Outdoor Parking Company, and James Tyrrell, against the City of Pontiac, a municipal corporation, Oscar Eckman, director of finance, and Walter K. Willman, city manager, to invalidate ordinance appropriating funds for purchase of parking lot, and to enforce referendum vote and enactment of proposed alternate ordinance. Decree for defendants. Plaintiffs appeal. Affirmed.

*Howlett, Hartman & Beier,* for plaintiffs.

*William A. Ewart,* City Attorney, and *Glenn C. Gillespie,* for defendants.

KELLY, J. Appellants sought an injunction preventing the city of Pontiac from appropriating and expending $157,890 for the acquisition and development of city owned and operated parking lots.

Defendant city of Pontiac in its cross bill requested that the court decree:

1. That said appropriation ordinance was not subject to referendum; and

2. That the Pontiac city commission was not required to enact an ordinance prohibiting all city officials from expending any public funds for the acquisition or development of city owned parking lots, or, in lieu of such action, submitting said proposal to a vote of the electorate for approval or rejection.

Defendants' request was granted. Plaintiffs have appealed.

Chapter 7, § 4 of the Pontiac city charter provides:

"No ordinance, except an emergency ordinance, shall take effect before 10 days after its final passage. If, within said 10 days, 100 electors of the city shall file a notice in writing with the clerk, of their intention to circulate a petition for submitting said ordinance to the electors for their adoption or rejection as herein provided, then said ordinance shall not become effective until 30 days after its final passage by the commission; provided that if petitions containing the requisite number of signatures required herein are not filed in accordance with such written notice within the said 30 days, then said ordinance shall become effective after the expiration of said 30-day period. If within said 30 days, a petition signed by qualified electors of the city equal in number to at least 10 per centum of all the electors voting at the last preceding general municipal election, be presented to the commission, protesting against such ordinance taking effect, the same shall thereupon and thereby be suspended from taking effect; the commission shall immediately reconsider such ordinance, and if the same be not entirely repealed, the commission shall submit it, by the method provided in this charter, to a vote of the qualified electors of the city, either at the next general municipal election or at a special election, which may in their discretion be called by them for that purpose, and such ordinance shall not take effect unless a majority of the qualified electors voting on the same at such election, shall vote in favor thereof; provided however, that the foregoing provisions shall not apply:

"(a) To ordinances required by the general laws of the State or by the provisions of this charter.

"(b) To emergency ordinances; provided no grant of any franchise shall be construed to be an emergency ordinance."

Question 1: Was appropriation ordinance 1202, enacted January 27, 1953, and amended by ordinance 1215 on June 2, 1953, an ordinance required

by the general laws of the State or by provision of the city charter?

The home rule act, PA 1909, No 279, as amended (CL 1948, § 117.1 *et seq.* [Stat Ann § 5.2071 *et seq.*]) requires each city charter shall provide for an annual appropriation of money for municipal purposes. Chapter 9, § 8, of the city charter provides:

"Not later than 1 month after the beginning of the fiscal year, the commission shall pass an annual appropriation ordinance. * * * At any meeting after the passage of the appropriation ordinance and after at least 1 week's notice in a newspaper printed and circulating in the city, the commission, by a vote of 5 members, may amend such ordinance, so as to authorize the transfer of unused balances appropriated for one purpose to another purpose, or to appropriate available revenues not included in the annual budget."

Appellants admit that if the Pontiac city commission had made the appropriation for parking lot purposes in the appropriation ordinance passed in January, 1953, that said appropriation would not be "subject to referendum because it is an ordinance required by law." They contend, however, that this exemption from referendum which applies to appropriation ordinances does not apply to a subsequent amendment to such ordinance, and base their conclusion on the fact that section 8 of the charter uses the word "shall" in regard to the passage of an appropriation ordinance, but only uses the word "may" in conferring the power to amend the original appropriation ordinance.

Appellants contend that "to be an ordinance required by law, within the meaning of the charter, the city must be under an unequivocal obligation to enact the ordinance." Appellants cite *People* v. *Illinois Central R. R. Co.,* 396 Ill 200 (71 NE2d 39), and *Hall* v. *City of Kenawee,* 379 Ill 176 (39 NE2d

1009). In the latter case, the court, in dealing with the question as to whether an ordinance was exempt from referendum because "required by law" stated (p 180): "There is no mandatory language requiring the city to pass any such acts except at its own discretion." Appellants, therefore, conclude that the commission of the city of Pontiac exercised a discretionary power in amending the original appropriation ordinance and their action was subject to referendum.

We cannot follow this distinction of appellants between referendum rights applicable to the appropriation ordinance as originally passed and the same ordinance after being amended.

The charter requirement of "at least one week's notice in a newspaper" before a meeting to consider an amendment, and the provision that such amendment be approved by at least 5 members of the commission, were complied with.

The charter clearly expressed the mandate of the people that an appropriation ordinance be passed in the month of January, the first month of the fiscal year. Just as clearly the people in said charter placed the right, yes duty, to amend the ordinance passed in January if subsequent events or change of judgment caused at least 5 of the commissioners to conclude that their judgment as expressed in the original appropriation should be changed.

Said right to amend was granted as fully by the word "may" as the duty to appropriate was established by the word "shall." We agree with the trial court's statement that: "The amended ordinance is an ordinance required by law and the charter in the same sense as the original ordinance and, as such, is not subject to the provisions of the charter covering the subject of initiative and referendum."

Question 2: Did the court err in determining that the petition for the adoption of the proposed ordi-

nance prohibiting defendant city and its officials from using public funds for the acquisition and development of parking facilities was void and of no legal effect?

The proposed ordinance provided in section 2 thereof as follows:

"No city official, employee, officer or agent shall expend, disburse or commit any public funds, revenues or income of the city of Pontiac, regardless of the source from which received, for the acquisition, development, maintenance or operation of facilities or areas for the off-street parking of automobiles or vehicles, other than those owned by the city."

The city of Pontiac is authorized by State law (PA 1947, No 286 [CL 1948, § 141.161 *et seq.* (Stat Ann § 5.2426[1] *et seq.*)]) and the city charter (chapter 2, § 1) to acquire and operate public parking facilities.

This Court has held that the municipal operation of parking lots has a definite bearing on public safety in the use of public streets and, as such, constitutes the lawful exercise of the police powers and powers expressly conferred by Michigan Constitution 1908, art 8, § 22. *Wayne Village President v. Wayne Village Clerk,* 323 Mich 592 (8 ALR2d 357).

We agree with the opinion of the trial court that said proposed ordinance, if adopted, would prohibit not only the present, but future, city officials from expending, disbursing or committing any funds of the city for purposes expressly authorized by both the charter and State law, and that therefore said proposed ordinance would be void and of no legal effect.

Question 3: Was the amended appropriation ordinance (1215) appropriating funds for the purchase and maintenance of public parking lots legally adopted?

Appellants contend it was not, because ordinance 1215 "appropriated funds to a purpose not set forth in the annual budget or any approved amendment thereto." It is conceded the funds appropriated for parking lots were not set forth in the annual budget. There is a dispute, however, as to whether the record discloses that the budget was amended so as to provide for said parking lots. Under the condition of this record this Court will accept the statement in section 5 of ordinance 1215, which reads as follows:

"This appropriation ordinance is based upon the budget submitted by the city manager, approved and adopted by the city commission of the city of Pontiac, after public hearing held January 20, A.D. 1953, *and as amended* under date of April 14, 1953 and June 2, 1953.".

Appellants next contend that "the annual budget figures submitted are controlling and that new taxes cannot be added as an afterthought or by amendment."

The 1953 budget, prepared in November, 1952, and the appropriation ordinance passed in January, 1953, were based upon an equalized valuation established by the board of supervisors of Oakland county for the city of Pontiac of $174,000,000. The board of supervisors increased the valuation on May 14, 1953, from $174,000,000 to $190,000,000, thus providing an additional $65,000 of possible taxes under the legal provisions for the spreading and collecting of city taxes based on 10 mills of the equalized valuation.

After being advised of the board of supervisors' decision of May 14, 1953, increasing the equalized assessed valuation of the city of Pontiac, the commission acted promptly at its first meeting held 5 days later, on May 19th, by the adoption of a resolution giving notice of its intention to amend the previous

annual appropriation ordinance. In this resolution the commission called attention to the fact that the acquisition of public parking lots "is necessary to relieve congestion on city streets and to promote the smooth flow of traffic and to benefit Pontiac citizens." This notice of intention to amend the ordinance was duly published as required by charter. At a regular meeting held on June 2, 1953, and after a public hearing, the commission unanimously passed the amended appropriation ordinance (1215).

Appellants cite *McVeigh* v. *City of Jackson,* 335 Mich 391, to sustain their position. In the *McVeigh Case* the Jackson charter did not give to its governing powers the right to amend its appropriation ordinance so as to transfer unused balances from one appropriated purpose to another or to appropriate available revenues not included in the annual budget, as is provided for in the Pontiac charter.

The cases are distinguishable inasmuch as in the instant case an ordinance was unanimously passed by the Pontiac city commission appropriating available revenue not included in the annual budget, as provided for by charter (set forth previously in this opinion), after all charter requirements of public notice and public hearings had been fully complied with.

We cannot agree with appellants' contention that the Pontiac city commission was prohibited from amending the appropriation ordinance and appropriating the additional available revenue not provided for in the original budget or original appropriation ordinance. Appellants do not question the fact that the appropriation is within the estimated and available taxable revenue for 1953.

Appellants challenge the commission's right to appropriate the $54,000 as estimated income from parking meters for 1953. Appellants contend that the city by its action in using said revenue for pub-

lic parking purposes is using said meters as a revenue-producing device.

We have previously in this opinion called attention to the fact that both the city charter and the State law authorize the city of Pontiac to acquire and operate public parking facilities and have referred to *Wayne Village President* v. *Wayne Village Clerk, supra.*

We agree with the trial court's opinion wherein it is stated:

"That the income from the operation of parking meters constitutes revenue of the city available for use in connection with the proper construction, use or maintenance of its public streets cannot be questioned. It is a matter of common knowledge that cities throughout the State have heretofore availed themselves of such revenue for the acquisition and operation of off-street parking lots to relieve the congestion in public streets. * * * We believe that the anticipated revenue from the meters was available revenue of the city, subject to appropriation by the city commission for the purpose set forth in the amended appropriation ordinance."

Decree affirmed. No costs, a public question being involved.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.