THOMSON v. CITY OF DEARBORN.

1. TAXATION—PUBLIC PROPERTY—EXEMPTION.
    The legislature has the right to subject public property to taxation or exempt it (CLS 1954, §§ 211.2, 211.7).

2. MUNICIPAL CORPORATIONS—PARKING LOTS—PUBLIC SAFETY.
    Municipally-owned and operated parking lots, together with the meters and fixtures thereon necessary for their operation, are lands used for public purposes and involve the public safety.

3. TAXATION—EXEMPTION—PUBLIC LANDS—PUBLIC SAFETY.
    Public lands, used in the reasonable exercise of the police powers, to promote public safety are lands used for public purposes and exempt from taxation under the general property tax act (Const 1908, art 8, § 22; CLS 1954, § 211.7).

4. MUNICIPAL CORPORATIONS—OFF-STREET PARKING FACILITIES—PUBLIC SAFETY.
    A municipality may acquire, through legislative authority, off-street parking facilities, since such works involve the public safety (Const 1908, art 8, § 22; CL 1948, § 117.4h; CLS 1954, §§ 141.103, 141.104).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur, Taxation § 557 *et seq.*
[2] 51 Am Jur, Taxation § 562.
[2-5] 51 Am Jur, Taxation § 563.

5. TAXATION—MUNICIPALLY-OWNED AND OPERATED PARKING LOT—
EXEMPTION.

Statute, applicable only to cities, which required them to tax
off-street parking facilities which they acquired and were
thereunder authorized to lease to others, did not have the
effect of removing city-owned and operated parking lot from
tax-exemption provisions of the general property tax act,
where no part of such lot has been leased to others (CL 1948,
§§ 141.161–141.163; CLS 1954, § 211.7).

6. COSTS—PUBLIC QUESTION—TAXATION OF MUNICIPALLY-OWNED AND
OPERATED PARKING LOTS.

No costs are allowed in proceeding to subject municipally-owned
and operated parking lots to taxation under the general prop-
erty tax act, a public question being involved (CL 1948,
§§ 141.161–141.163; CLS 1954, § 211.7).

Appeal from State Tax Commission. Submitted
January 15, 1957. (Docket No. 71, Calendar No.
47,068.) Decided May 17, 1957.

James Thomson protested the action of the City
of Dearborn in exempting from taxation certain
municipally-owned automobile parking lots. From
the State Tax Commission's denial of his request to
place property on assessment rolls, plaintiff appeals.
Affirmed.

*James Thomson*, in propria persona.

*Dale H. Fillmore*, Corporation Counsel, and
*Frederick G. Weideman*, Assistant Corporation
Counsel, for defendant.

*Amicus Curiae:*

City of Detroit, by *Paul T. Dwyer*, Corporation
Counsel, and *Vance G. Ingalls*, Assistant Corpora-
tion Counsel.

DETHMERS, C. J.  Plaintiff, a resident owner of
real estate in defendant city, appeals from a deter-

mination of the State tax commission that parking lots owned and operated by defendant, for the use of which a fee is charged, are exempt from property tax.

"The right of the legislature either to tax or exempt such public property is not open to question." *City of Traverse City* v. *Township of Blair,* 190 Mich 313, 321 (Ann Cas 1918E, 81).

Section 2 of the general property tax act, PA 1893, No 206 (CLS 1954, § 211.2; Stat Ann 1950 Rev § 7.2), provides:

"For the purpose of taxation, real property shall include all lands within the State, and all buildings and fixtures thereon, and appurtenances thereto."

Section 7 of the act (CLS 1954, § 211.7; Stat Ann 1950 Rev § 7.7) provides:

"The following property shall be exempt from taxation: * * *

"Lands owned by any county, township, city, village or school district and buildings thereon, used for public purposes."

That municipally-owned and operated parking lots, together with the meters and fixtures thereon necessary to their operation, are lands used for public purposes follows from our holdings in *Wayne Village President* v. *Wayne Village Clerk,* 323 Mich 592, 600, 605, 606 (8 ALR2d 357), in which we said "an expenditure of public funds to acquire off-street land for parking is a legitimate public purpose involving public safety. * * * We conclude that a municipal parking system combining parking facilities both on public streets and on off-street property of a municipality, for which a charge for use is made, is a public use;" *City of Detroit* v. *Wayne Circuit Judges,* 339 Mich 62, 69, in which we said, "The expenditure of public funds to acquire and operate

off-street parking facilities involves public safety;" *Stolorow* v. *City of Pontiac,* 339 Mich 199, 205, in which we said, "This Court has held that the municipal operation of parking lots has a definite bearing on public safety in the use of public streets and, as such, constitutes the lawful exercise of the police powers and powers expressly conferred by Michigan Constitution 1908, art 8, § 22;" and *Cleveland* v. *City of Detroit,* 324 Mich 527 (11 ALR2d 171), in which we said that a municipally-owned parking facility is like other public works. It can scarcely be gainsaid that public lands used, in the reasonable exercise of the police powers, to promote public safety are lands used for public purposes. Accordingly, the exemption provided in section 7 of the general property tax act should be held to apply. *City of Bay City* v. *State Board of Tax Administration,* 292 Mich 241, is not, as urged by plaintiff, contrary authority. Whether the lands of the municipally-owned utilities involved in that case came within the legislatively-granted exemption in section 7 of the general property tax act was neither at issue nor decided. Rather, the decision was that the legislatively-imposed sales tax was collectible by the State on the retail sales of those utilities.

The question remaining is whether the exemption so granted by said section 7 has subsequently been withdrawn from city-owned lands used for the kind of public purpose here involved by the provision of section 1 of PA 1947, No 286 (CL 1948, § 141.161 [Stat Ann 1949 Rev § 5.2426(1)]), that, "Automobile parking facilities owned by a city and for the use of which a fee is charged, shall not be exempt from taxation."

Defendant relies on *Cleveland* v. *City of Detroit, supra,* in which we said (p 539):

"We do not agree with that portion of the decree in which it is stated in substance that such underground parking facility, though like other public works to be constructed under the provisions of the revenue bond act (PA 1933, No 94, as amended), may not properly be exempted from taxation. This determination is contrary to that in *Ford Motor Co.* v. *City of Detroit,* 267 Mich 177."

Although that case was decided 2 years after enactment of the 1947 act, its applicability or effect was not discussed in the opinion. Contemplated there was a parking facility beneath the surface of a street and not, as here, an off-street parking lot. The *Ford Motor Company Case,* cited in the opinion therein, is, clearly, not controlling of the question before us.

Michigan Constitution 1908, art 8, § 22, provides:

"Any city or village may acquire, own, establish and maintain, either within or without its corporate limits, parks, boulevards, cemeteries, hospitals, almshouses and all works which involve the public health or safety."

This constitutional language is broad enough to encompass an off-street parking facility heretofore held, as above noted, to be a work involving public safety. In the *Wayne Village President Case* we said that this constitutional provision is not self-executing, but requires implementation by legislative act. The home-rule act, PA 1909, No 279 (CL 1948, § 117.1 *et seq.* [Stat Ann 1949 Rev § 5.2071 *et seq.*]), as amended, and particularly section 4-h thereof, provides:

"Each city may in its charter provide:     *     *     *
"(6) For the acquiring, establishment, operation, extension and maintenance of facilities for the storage and parking of vehicles within its corporate limits, including the fixing and collection of charges

for services and use thereof on a public utility basis, and for such purpose to acquire by gift, purchase, condemnation or otherwise the land necessary therefor." CL 1948, § 117.4h (Stat Ann 1949 Rev § 5.-2081).

The revenue bond act of 1933, PA 1933, No 94, as amended (CL 1948 and CLS 1954, § 141.101 *et seq.* [Stat Ann 1949 Rev and Stat Ann 1955 Cum Supp § 5.2731 *et seq.*]), and, particularly, section 4 thereof, provides:

"Any public corporation is authorized to purchase, acquire, construct, improve, enlarge, extend and/or repair 1 or more public improvements and to own, operate and maintain the same, within and/or without its corporate limits, and to furnish the services, facilities and commodities of any such public improvement to users." CLS 1954, § 141.104 (Stat Ann 1955 Cum Supp § 5.2734).

Section 3 provides:

"The term 'public improvements' is hereby defined as and limited to the following improvements: * * * automobile parking facilities." CLS 1954, § 141.103 (Stat Ann 1955 Cum Supp § 5.2733).

Section 4 also provides:

"No commercial enterprise, other than the parking or storage of motor vehicles, shall be conducted or authorized at or upon any automobile parking facility authorized under the provisions of this act."

That statutory prohibition was continued and reenacted in the amendment of 1954, PA 1954, No 136.

Under the above constitutional authority and enabling statutes, defendant was empowered to and did obtain and operate the parking lots in question for the use of which a fee is charged. Cities needed no additional statutory authority for that purpose. What, then, was the occasion for enactment of PA 1947, No 286 (CL 1948, §§ 141.161–141.163 [Stat

Ann 1949 Rev §§ 5.2426(1)–5.2426(3)])? It consisted of 3 sections. Section 1, granting cities the right to acquire and operate parking lots, conferred no authority which, as just noted, they did not already possess. Section 3 provided merely that the act should not be deemed to repeal or limit powers granted in any other act, but should be construed as cumulative authority for the exercise of such powers. It remained for section 2 to make the only new contribution to the authority of cities in connection with the owning and operating of parking facilities. It authorized cities to lease to others a portion of the facility for private business or other purposes.

Significant is the fact that the revenue bond act authorizes all local units of government to acquire and operate parking facilities, to which, in our view, the exemption of section 7 of the general property tax act extends, whereas PA 1947, No 286, with its taxing requirement, applies only to cities. Could it have been the legislative intent, in enacting the latter, to cause all fee-producing parking facilities of cities to be subject to tax while leaving those of all other municipal units exempt? We think not. We think the sole purpose of the 1947 act was to make leasing in the manner mentioned permissible and that the legislature intended thereby to withdraw the exemption from taxation only from those city-owned and operated parking facilities of which a portion had been leased for private purposes. Such withdrawal would tend to serve the equitable purpose of eliminating unfair competition by equalizing the cost factors of private business operations on municipally-owned facilities with those of competing businesses on privately-owned lands bearing their fair share of the tax burden. No part of the facilities in this case is leased by the city to others. Parenthetically, it is to be observed that the leasing provisions of the 1947 act were held invalid in *Shizas*

v. *City of Detroit,* 333 Mich 44. That act is without application here and, hence, the exemption of section 7 of the general property tax act does apply.

Affirmed. No costs, a public question being involved.

SHARPE, SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.