CRAMPTON v. CITY OF ROYAL OAK.

ACORN VETERANS MEMORIAL HOME ASSOCIATION v. SAME.

TROELSEN v. SAME.

LAWSON ESTATES, INC., v. SAME.

OAK CONSTRUCTION COMPANY v. SAME.

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENT—SPECIAL ASSESSMENTS.

A home-rule city is empowered to engage in public improvements and raise part or all of the necessary cost thereof by special assessments levied on property specially benefited thereby within a district created by authorized legislative procedure.

2. SAME—PUBLIC IMPROVEMENT.

The improvement of streets and highways, the construction of a mall and plaza for pedestrian traffic, the furnishing of reasonable and adequate parking facilities as a part of the general traffic problem, the retiring of outstanding parking

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Special or Local Assessments §§ 8, 21 *et seq.*
[2] 48 Am Jur, Special or Local Assessments § 30 *et seq.*
[3, 4] 48 Am Jur, Special or Local Assessments §§ 114, 115.
[5, 6] 48 Am Jur, Special or Local Assessments § 23.
[7, 8] 48 Am Jur, Special or Local Assessments §§ 21, 24.
[9] 48 Am Jur, Special or Local Assessments § 57 *et seq.*
[10, 13] 48 Am Jur, Special or Local Assessments § 63.
[11, 12, 14, 16] 48 Am Jur, Special or Local Assessments § 64.
[15] 48 Am Jur, Special or Local Assessments §§ 57, 63.
[17] 14 Am Jur, Costs § 37.

revenue bonds, the combination of interrelated component improvements for the central business district, and the erection of a special assessment district to defray the cost thereof is within the power of a home-rule city to make (CL 1948 and CLS 1956, § 117.1 *et seq.*, and § 141.101 *et seq.*, as amended).

3. SAME—PUBLIC IMPROVEMENT—SPECIAL ASSESSMENT DISTRICT—DISCRETION OF COMMISSION.

A special assessment district embracing lands within reasonable proximity to contemplated improvement of central business district of defendant city *held*, within the legislative powers of the city commission to create and not to justify conclusion that commission's legislative discretion was abused, there being no claim of fraud, mistake, or capricious action (Royal Oak Charter, §§ 1, 1A, 3–7).

4. SAME—PUBLIC IMPROVEMENT—SPECIAL ASSESSMENT DISTRICT.

Claim of property owners within special assessment district, created to absorb most of the cost of improving central business district of home-rule city, that the district was not properly constituted *held*, not supported by adequate proofs, each of the phases of the project involving improvement of streets, construction of a mall and plaza for pedestrian traffic, establishment of adequate parking facilities, and retirement of outstanding parking revenue bonds, being within the powers of the city and no claim made there was any fraud, mistake, or arbitrary and capricious action on the part of the commission in exercising its legislative discretion in establishing such district (CL 1948 and CLS 1956, § 117.1 *et seq.*, and § 141.101 *et seq.*, as amended; Royal Oak Charter, §§ 1, 1A, 3–7).

5. SAME—PUBLIC IMPROVEMENT—SPECIAL ASSESSMENT DISTRICT.

It is not the present use of property which determines whether or not the benefit it receives from a public improvement may be made the basis for a special assessment by a municipal corporation, as benefits are to be measured by potential uses, including those uses rendered more feasible by the carrying out of the project.

6. SAME—CHANGE IN USE—SPECIAL ASSESSMENT DISTRICT.

Property whose present use may not be benefited by proposed public improvement was nevertheless properly included within a special assessment district, where a change in the use of the property was not an impossibility, as the present use does not establish a fixed criterion for determining whether benefits are received.

7. SAME—PUBLIC IMPROVEMENT—SPECIAL ASSESSMENT—ENHANCE-
MENT OF VALUE.

The special benefits to lands assessed for a public improvement
need not necessarily be measured solely by the enhanced value
of the lands so assessed.

8. SAME—DOWNTOWN IMPROVEMENT—SPECIAL ASSESSMENT DISTRICT.

Property owners' claim that their properties were not subject
to a special assessment for benefits received as a part of the
especially benefited, and properly established, district *held*,
not substantiated in their suits to declare a comprehensive
improvement project for improvement of the "downtown"
business district, as the betterment of the conditions in such
district would clearly have a natural tendency to benefit, to
some extent, all lands within the city and especially those par-
cels located in proximity to the improved section (CL 1948 and
CLS 1956, § 117.1 *et seq.*, and § 141.101 *et seq.*, as amended;
Royal Oak Charter, §§ 1, 1A, 3-7).

9. SAME—SPECIAL ASSESSMENT DISTRICT—APPORTIONMENT.

A city assessor in apportioning the assessment upon properties
within special assessment district created by the city commis-
sion has the duty of following the directions of the commission
in respect to apportionment.

10. SAME—PUBLIC IMPROVEMENT—SPECIAL ASSESSMENT.

The levy of a special assessment for municipal public improve-
ments that is not made in accordance with benefits cannot
be sustained.

11. SAME—SPECIAL ASSESSMENT—APPORTIONMENT.

The levy of a special assessment by a municipal corporation based
on assessed values on the assumption that such method reflects
benefits to be received by each parcel assessed may not be
considered a fair and equitable apportionment, where the ben-
efits from the improvement involved do not approach uni-
formity on the basis of property valuation.

12. SAME—DOWNTOWN BUSINESS DISTRICT—SPECIAL ASSESSMENT—
APPORTIONMENT OF COST—BENEFITS.

A special assessment based in part on the hitherto assessed value
of property within the district for a public improvement, not
designed for the protection of the property but to benefit the
city as a whole and the special assessment district in particular
by promoting the use and enjoyment of the "downtown" busi-
ness district of a home-rule city and enhancing its value, did
not apportion the cost in a manner reasonably related to the
benefits conferred (CL 1948 and CLS 1956, § 117.1 *et seq.*,

and § 141.101 *et seq.*, as amended; Royal Oak Charter, §§ 1, 1A, 3-7).

13. SAME—PUBLIC IMPROVEMENT—APPORTIONMENT OF ASSESSMENT.

The requirement that the value of the benefits flowing from a municipal public improvement shall be assessed means that the assessors shall, from their knowledge, experience, observation, and judgment, make a fair and just estimate of the benefit which each particular piece of property will receive by reason of the improvement, the amount of the assessment being limited by the amount of the benefits.

14. SAME—PUBLIC IMPROVEMENT—SPECIAL ASSESSMENT—APPORTIONMENT—BENEFITS—VALUATION.

A special assessment for a municipal public improvement that is required to be apportioned according to benefits cannot be apportioned to the property owners upon the basis of valuation.

15. SAME—PURPOSE OF PUBLIC IMPROVEMENT—APPORTIONMENT OF COST.

Consideration must be given to the purpose to be attained by a municipal public improvement sought in order to apportion the cost of the improvement equitably within the special assessment district established.

16. SAME—DOWNTOWN BUSINESS DISTRICT IMPROVEMENT—SPECIAL ASSESSMENT—APPORTIONMENT—VALUATION—BENEFITS.

The apportionment of special assessment for a multiple-phase downtown business district improvement project, deemed beneficial in part to the entire city and especially to the special assessment district created, pursuant to formula whereby half of the district's share was based on assessed valuation of preceding year and other half was apportioned on the basis of benefits to each parcel may not be sustained since it was not in accordance with pertinent statutory and charter requirements (CL 1948 and CLS 1956, § 117.1 *et seq.*, and § 141.1 *et seq.*, as amended; Royal Oak Charter, §§ 1, 1A, 3-7).

17. COSTS—PUBLIC QUESTION.

No costs are allowed in suits to determine legality of special assessment district and apportionment of costs for municipal improvement involving downtown business district area, a public question being involved (CL 1948 and CLS 1956, § 117.1 *et seq.*, and § 141.1 *et seq.*, as amended; Royal Oak Charter, §§ 1, 1A, 3-7).

BLACK and KAVANAGH, JJ., dissenting.

Appeal from Oakland; Beer (William John), J. Submitted October 11, 1960. (Docket Nos. 60–64, Calendar Nos. 48,794, 48,795, 48,796, 48,911, 48,912.) Decided February 28, 1961.

Bill by Anna B. Crampton, doing business as Griswold Realty Co., against the City of Royal Oak, a home-rule city, for declaration of rights, challenging the authority of the city to redevelop its central business district as a public improvement, and attacking the special assessment therefor as not being on basis of benefits accruing to property affected.

Similar actions by Acorn Veterans Memorial Home Association, a nonprofit corporation, Thorvald Troelsen, and Lawson Estates, Inc., and Oak Construction Company, Michigan corporations.

Cases heard together. Bills dismissed. Plaintiffs appeal. Modified as to method of assessment and remanded.

*Davis & Thorburn,* for plaintiffs Crampton, Troelsen, and Lawson Estates, Inc.

*Clarence A. Bradford,* for plaintiff Acorn Veterans Memorial Home Association.

*Howard I. Bond* and *Thomas J. Dillon,* for plaintiff Oak Construction Company.

*Allan G. Hertler,* City Attorney, and *Miller, Canfield, Paddock & Stone* (*Stratton S. Brown* and *Robert Hammell,* of counsel), for defendant.

CARR, J. This case has resulted from an attempt on the part of the defendant city to improve its central business district. The project, as planned, included the improvement and enlargement of auto-

mobile parking facilities, the retiring of outstanding parking revenue bonds, the widening of certain streets, the opening of a new street, and the development of a pedestrian mall and plazas. The total cost was estimated at the sum of $2,803,657.40. The resolution of the city commission provided for the establishment of a special assessment district comprising the property on which there was directed to be assessed, according to benefits, the sum of $2,660,526.04. The balance of $143,131.36 was directed to be apportioned to the city at large.

The area involved in the project is approximately 6 city blocks from east to west, and 7 blocks from north to south. Embraced therein is the central business district of Royal Oak. The various improvements sought to be combined to accomplish the desired result are claimed by defendant city as severally necessary to carry out the purpose of the project. It is, in other words, asserted that the entire project involved a single objective with specific changes incorporated therein as essential to the plan.

Following approval of the project, the city commission by appropriate resolution directed the city assessor to prepare a special assessment roll for said improvement, assessing to the district specified, according to benefits, the amount of the total cost apportioned thereto. In accordance with said direction the assessor prepared the roll, charging each parcel of land within the district with the amount considered by him to be its proper share of the burden. Said roll was then submitted to the city commission and was approved by that body.

The plaintiffs are severally the owners of lands within the assessment district created by action of the commission. They instituted separate suits,*

---

* Actions were brought specifically under PA 1929, No 36 (CL 1948, §§ 691.501–691.507 [Stat Ann §§ 27.501–27.507]).—REPORTER.

each claiming in substance that the special assessment was illegal and invalid and not properly imposed on the property subject thereto, that the project of the city was not a public improvement within the meaning of the statutes of the State and the charter of the city, that the defendant lacked authority to levy such assessment, that the burden imposed on each plaintiff's real estate was not commensurate with the benefits that would accrue thereto as the result of the improvement, and that the assessments within the district were not properly levied. Defendant filed answers in substance denying the claims made with reference to the validity of the proceeding. The cases instituted by the property owners were heard together in circuit court and disposed of on the issues raised and the proofs received in open court. The circuit judge hearing the matter concluded that the plaintiffs were not entitled to the relief sought by them, which relief involved a determination of the rights of the parties under the facts and the law. A decree was accordingly entered dismissing each bill of complaint, and plaintiffs have appealed.

No claim is made that the defendant city is not empowered by provisions of the Constitution and pertinent legislative enactments to engage in public improvements, nor is the right challenged to raise part or all of the necessary cost thereof by special assessments levied on property within a district created by authorized legislative procedure. The legality of assessments on property especially benefited from the improvement of streets and highways has been repeatedly recognized by this Court. *Loomis* v. *Rogers,* 197 Mich 265, 281. As above noted, the project in question here involves improvements of such nature. The contemplated mall and plazas are apparently designed for pedestrian traffic with the thought in mind of contributing to the

safety of such traffic and to the use and enjoyment of the business facilities in the central district of the city. The furnishing of reasonable and adequate parking facilities as a part of the general traffic problem is not now open to question. *Wayne Village President* v. *Wayne Village Clerk*, 323 Mich 592 (8 ALR2d 357), cited and followed in *Stolorow* v. *City of Pontiac*, 339 Mich 199, 205. The matter of retiring outstanding parking revenue bonds is specifically covered by PA 1933, No 94,* as amended by PA 1959, No 78, which added a new section to said act designated as section 20c thereof, as follows:

"When a borrower has outstanding any parking revenue bonds issued under the provisions of this act, it may thereafter levy special assessments against properties specially benefited by the parking facilities originally financed by the bonds, but no assessment shall be made at large, and may issue special assessment bonds therefor in anticipation of the payment of the special assessments for the purpose of providing for the retirement of the outstanding bonds in whole or in part. The special assessment bonds may pledge the full faith and credit of the public corporation issuing them, as determined by the governing body of the public corporation. The special assessment bonds may be issued to include the amount of any premium to be paid upon the calling of the parking revenue bonds to be refunded or if such bonds are not callable, any premium necessary to be paid in order to secure the surrender of the bonds to be refunded; but the amount of the premium so included shall not exceed 5% of the principal amount of the bonds to be refunded. The procedures for levying the special assessments and for issuing the special assessment bonds shall be the same as that provided by charter

* CL 1948 and CLS 1956, § 141.101 *et seq.*, as amended (Stat Ann 1958 Rev and Stat Ann 1959 Cum Supp § 5.2731 *et seq.*).

or other applicable law. Nothing in this section shall be construed as providing for the refunding of noncallable unmatured bonds without the consent of the holders thereof."

Said amendment* was given immediate effect and was approved June 29, 1959. The charter of the city of Royal Oak, as amended, is in accord with the statutory provisions quoted. Controlling provisions of said charter are found in chapter 12 thereof which relates to special assessments. The following provisions are pertinent to the questions raised in the instant case.

"Sec. 1. The commission shall have power to provide for the payment of all or any part of the cost of construction, reconstruction, repair, operation or maintenance of any structure or work in the nature of public improvement, by levying and collecting special assessments upon property specially benefited. Any special assessment levied pursuant to the provisions of this chapter may be made payable in yearly instalments for a period not exceeding 20 years.

"Sec. 1A. The commission shall have the power to levy and collect special assessments upon property specially benefited by existing public improvements originally financed by revenue bonds, for the purpose of providing for the retirement of any such outstanding revenue bonds in whole or in part. Any such special assessment may include the amount of any premium to be paid upon the calling of the bonds to be retired.    *   *   *

"Sec. 3. When the commission shall determine to make any public improvement, or repairs, alterations or additions to any public improvement, and defray the whole or any part of the cost and expenses thereof by special assessment, they shall so declare by resolution stating the nature of the improvement and what portion of the cost and expenses

---

* See PA 1959, No 78 (CL 1948, § 141.120c [Stat Ann 1959 Cum Supp § 5.2750(3)]).—REPORTER.

thereof shall be paid by special assessment, and what portion, if any, shall be borne by the city, and shall designate the district or lands and premises upon which the special assessments shall be levied.

"Sec. 4. Before ordering any public improvements or repairs, any part of the expenses of which is to be defrayed by special assessment, the commission shall cause estimates of the expenses thereof, to be made, and also plats and diagrams, when practicable, of the work and of the locality to be improved, and deposit the same with the clerk for public examination; and they shall give notice thereof and of the proposed improvements, and of the district to be assessed, and of the time and place when the commission will meet and consider any objections thereto, by publication once at least 5 days prior to such meeting in a newspaper published and circulating in the city.

"Sec. 5. When any special assessment is to be made pro rata upon the lots and premises in any special assessment district, according to frontage or benefits, the commission shall, by resolution, direct the same to be made by the city assessor and shall state therein the amount to be assessed and whether according to frontage or benefit; and describe or designate an assessment district comprising the lands to be assessed.

"Sec. 6. Upon receiving such orders and direction, the city assessor shall make out an assessment roll, entering and describing therein all the lots, premises and parcels of land to be assessed, with the names of the persons, if known, chargeable with the assessment therein; and shall levy thereon and against such property the amount to be assessed, in the manner directed by the commission and provisions of this charter applicable to the assessment.   *   *   *

"Sec. 7. If the assessment is required to be according to frontage, the city assessor shall assess to each lot or parcel of land such relative portion of the whole amount to be levied, as the length or front of such premises abutting upon the improvement

bears to the whole frontage of all lots to be assessed, unless on account of the shape or size of any lot, an assessment for a different number of feet would be more equitable. If the assessment is directed to be according to benefits, then he shall assess upon each lot such relative portion of the whole sum to be levied as shall be proportionate to the estimated benefit resulting to such lot from the improvement."

It will be noted that the above quoted section of the statute and the provisions of the charter expressly authorized the retirement of outstanding revenue bonds payable from the proceeds of assessments for benefits received from the establishment of parking facilities. It thus appears that the inclusion as a part of the project of the retirement of said bonds was and is expressly authorized. No question is raised as to the validity of the statute or of the charter provisions. It is the claim of the defendant that the retirement of said bonds was necessary to the end that free parking facilities should be furnished as an essential part of the project, in lieu of metered parking spaces.

The argument, particularly stressed on behalf of appellant Oak Construction Company, that the defendant's project involved separate and distinct improvements is not in accord with the proofs or the objective sought to be attained by said project. The general purpose to be served is the improvement of the central business section of the city with the thought in mind that the city at large, and particularly lands in the immediate vicinity, will be benefited thereby. The different components of the undertaking are so interrelated that each is essential to the carrying out of the proposed plan. The situation is somewhat analogous to that presented in *Cuming* v. *City of Grand Rapids,* 46 Mich 150. Involved there was a project for the paving of portions of certain streets. It was the claim of the

plaintiff that each street, or portion thereof, should be regarded as a separate project and the cost covered by a separate assessment. In rejecting such contention the Court, speaking through Justice COOLEY, said (p 157):

"In the case at bar the authorities have treated the improvement as a unit, and there is nothing in the record which conclusively shows that they erred. We must therefore assume that the conclusion was just. It is not disputed that they had ample power by statute to levy an assessment; and that being conceded, we cannot assume from any ambiguous facts that they erred in exercising the power. *Stockle* v. *Silsbee*, 41 Mich 615."

In the light of the factual situation presented in the instant case it may not be said that the project here involved is not within the corporate powers of the defendant city or that treating the proposed improvement as a unit, designed to accomplish a single public purpose, was erroneous. So far as this issue is concerned, plaintiffs have not sustained the burden of proof resting on them.

It is further contended by appellants that the special assessment district is not properly constituted. It may be stated generally that the district as created by action of the city commission embraces lands within reasonable proximity to the contemplated improvement. There is nothing in the record before us to suggest fraud or mistake, or that the action of the commission was arbitrary or capricious. Invariably when a special assessment district is created, as in the instant case, opinions may differ as to its proper extent and its inclusion, or noninclusion, of specific property therein. The creating of the district was within the legislative powers of the commission, and the presumption of validity attaches to the action taken. We find no basis for a conclusion that the legislative discretion vested

in the commission was abused. *City of Detroit* v. *Weil,* 180 Mich 593.

Counsel for appellants have called attention to *Fluckey* v. *City of Plymouth,* 358 Mich 447. There plaintiffs sought relief by way of a decree invalidating and restraining the collection of special assessments for highway expansion. The proofs indicated that the property of the plaintiffs, instead of being benefited, had in fact sustained a detriment. In affirming a decree of the circuit court granting relief, it was said (p 454):

"It must be stressed that the facts before us do not involve a mere error in judgment on the part of assessing authorities. We do not trifle with such. Nor do they involve the substitution of the judgment of the court upon the worth of special benefits conferred. The assessors, not the court, weigh the benefits, if, in truth, there are benefits to be weighed. The point here is more fundamental: where, viewed in its entirety, no benefit upon abutting property owners has been conferred by the improvement, but rather a detriment suffered, a special assessment based upon the enhancement of the value of the property is a fraud in law upon such property owners. There has been no enhancement. We are not unaware of such arguments as that the elimination of the formerly existing dirt shoulders would lessen the dust in the area, and that the depressions or ditches along the old road have been filled, but it was the conclusion of the trial chancellor that 'the special benefits which are claimed by the city of Plymouth are pretty much afterthoughts.' We need not go so far. The doctrine of *de minimis* is fully applicable to alleged benefits conferred by the elimination of problems so nebulous."

It is, we think, apparent that the decision in the case cited is not in point in the present controversy. None of the appellants here claims a detriment resulting from the improvement. As above indicated,

the assessment district was properly created and it has not been made to appear that there was fraud, mistake, or arbitrary or capricious action involved in the determination of the legislative body of the city that all property within the special assessment district would be benefited by the carrying out of the contemplated project. The claim that said district was not properly constituted is not supported by adequate proofs.

Were plaintiffs' lands within the district subject to assessment for benefits received? This query and the arguments of appellants with reference thereto naturally suggest the basis on which a special assessment may properly be levied. Counsel for appellant Acorn Veterans Memorial Home Association argues that the value of its real estate will not be enhanced by the "proposed changes in downtown Royal Oak". Some emphasis is laid on the claim that the property could not be sold or mortgaged other than by 2/3 vote of the active members of the association. Obviously, however, a change in the use of the property is not an impossibility, and a like comment may be made with reference to other properties which apparently have been specially treated, under the assessment as approved by the city commission, because of present use. However, such use does not establish a fixed criterion for determining whether benefits are received. As said in *I. H. Gingrich & Sons* v. *City of Grand Rapids,* 256 Mich 661, 667, 668:

"It is not the present use of property which determines the benefit it receives from a street improvement; it is, rather, its available use. Benefits are not to be measured by present actual uses but by potential uses."

In *Foren* v. *City of Royal Oak,* 342 Mich 451, plaintiffs sought to enjoin the collection of special assess-

ments on their property, claiming that such property was not benefited by the paving of a road, the cost of which was imposed on a special assessment district on the basis of benefits received. It was the claim of the plaintiffs in substance that their property, because of the uses to which they subjected it, was not benefited. This Court, commenting on such claim, said (pp 455, 456):

"The fact, if it be a fact, that plaintiffs may not wish to subdivide their plots or to use Orchard View as a means of access thereto does not obviate the fact that the paving would make such action more convenient and possible and enhance the value of their properties accordingly. Pictures and testimony in the record establish that paving of the dirt road would definitely have that effect. The use to which plaintiffs may put their properties now or may wish to put them in the future is not controlling of the question of resulting benefits or validity of the assessment. *Powers* v. *City of Grand Rapids,* 98 Mich 393. Nor is the measure of special benefits to the properties solely that of the enhanced values thereof. *Oakland County Drain Com'r* v. *City of Royal Oak,* 325 Mich 298 (11 ALR2d 1122)."

Without discussing the issue in detail, it is clearly the settled law of this State that in determining whether property is benefited by a particular improvement the inquiry is not limited to the present use of the property but, rather, to uses to which it may be put, including such as may be rendered more feasible by the carrying out of the project in connection with which the assessment is levied. In the instant case the betterment of conditions existing in the business, or "downtown", section of the city would clearly have a natural tendency to benefit, to some extent at least, all lands within the city and especially those parcels located in proximity to the improved section. We are unable to agree with the

contention of the plaintiffs that their properties were not subject to an assessment for benefits received as a part of the especially benefited, and properly established, district.

This brings us to a consideration of the claim of appellants that the method of assessment followed by the city was improper and did not reflect actual benefits received by property within the district affected. Acting pursuant to the charter the commission directed the making of assessments on the benefits basis. In substance it is claimed that such direction was not followed. It appears from the record that the portion of the cost of the contemplated project charged against the assessment district was divided into 2 equal parts, the first part being levied on the basis of the assessed valuation of each parcel according to the tax rolls of 1958. The other half was apportioned, according to the claim of the city, on the basis of benefits received by each parcel. It further appears that 42 parcels, some of which are owned by appellants in this case, were assessed wholly on the basis of the apportionment of the first half of the district's portion of the cost. In other words, as to such 42 parcels the special assessment rested entirely on the basis of assessed values fixed in 1958. The city assessor, called by plaintiffs for cross-examination under the statute, testified as follows with reference to the precise method followed by him:

"*A.* I am presently assessor of the city of Royal Oak and have served in that capacity since November of 1958, previous to which time I was deputy city assessor of Royal Oak commencing in June, 1949. Shortly after June 29, 1959, I was instructed by the Royal Oak city commission to prepare special assessment roll No. 1545 and to assess each parcel within the special assessment district for its share of the cost of certain public improvements on the

basis of the special benefit to be received by each parcel from such public improvement. I adopted an assessment formula composed of 2 parts; the first part of the formula is based on the 1958 assessed value of the land only for general tax purposes, while the second part of the formula is based on the closeness or remoteness and square footage of each parcel of land within the assessment district to the proposed public improvements. Defendant's exhibit B is a correct statement in summary form of the formula which I developed and adopted in assessing the property set forth in roll No. 1545. The total cost of the proposed improvements will be approximately $2,800,000; I was ordered by the city commission to deduct from that figure $143,000 as the share to be assessed against the city at large. I did not exercise my discretion or judgment in determining how much the city at large should pay for the benefits it will receive from the installation of the public improvements.

"*Q*. Now, the remaining $2,600,000, did you then divide it into 2 equal parts?

"*A*. For the purposes of the special assessment, yes.

"*Q*. And did you then assess against the parcels within the special assessment district $1,300,000 odd dollars on an ad valorem basis, or on a basis of 1958 assessment value of the land only?

"*A*. In direct relation, yes.

"*Q*. So that for the first part of this assessment, the first half so called for convenience, there was no relation whatever to the benefits that anyone would receive from the alleged improvements, is there?

"*A*. Yes, I believe benefit was considered.  *  *  *

"*Q*. Will you please tell the court then why you used 2 different approaches to it and had 2 aspects to your assessment formula; if the first half was on a benefit basis, why didn't you use that to assess the whole $2,600,000?

"*A*. A portion of the anticipated benefits was construed to be in relation to the property as it is, or

as it was in 1958. And the second 1/2 of the special assessment was construed to be a benefit to the property in relation to its location."

As appears from the excerpts of the city charter, above quoted, the city commission had the power to direct a special assessment to be made according to frontage or according to benefits. In this case the commission by its resolution required the assessor to proceed on the special benefits alternative, and apparently this is what the assessor claimed he undertook to do. Unquestionably it was his duty to follow the directions of the commission. *Walker v. City of Ann Arbor,* 118 Mich 251. This presents the question squarely as to whether, in the case of an improvement of the nature here involved, an assessment for benefits to property may be based on the assessed value of the land, claimed to be benefited, in this case on the valuations fixed in 1958. In effect defendant now insists that the assessor proceeded properly. Plaintiffs take a contrary view, arguing that such an assessment is not fair or equitable as between different parcels of land in the assessment district, and does not measure the benefits received thereby.

In *Grand Rapids School Furniture Company v. City of Grand Rapids,* 92 Mich 564, this Court, after considering the prior decision in *Hoyt v. City of East Saginaw,* 19 Mich 39 (2 Am Rep 76), accepted the view that an assessment must be levied in proportion to benefits, a view that obviously means the rejection of the application of a uniform rule that does not so result. In discussing the legal question, it was said in part (pp 568, 569):

"It is difficult to see how any uniform rule can be adopted for the extension of a tax for improvements upon any basis of valuation, the benefits from which do not approach uniformity. As well might rules

be attempted to govern questions of damages as of benefits.  *  *  *

"There can be no uniform rule which would be equitable, based upon matured valuation. The benefits can only be assessed in proportion to increased advantages by reason of the opening. The advantage may be the same to 2 lots side by side, although one lot may be improved, and of much greater value than the other. The cost of local improvements is not assessed according to the value of the property. The assessors are not to determine the increased valuation of the district by reason of this improvement, nor the value of this improvement to the district, for that has been fixed by the council. They are simply to apportion a fixed amount, not with reference to values alone, but also with reference to needs, necessities, and advantages."

In *Cummings* v. *Garner,* 213 Mich 408, the Court was concerned with the interpretation and validity of provisions of the so-called Covert act* which provided for the improvement of highways under an assessment district plan. In discussing the authority granted by the statute to establish the boundaries of the district to be affected, and the levying of a special assessment therein proportioned to the benefits received by each parcel of land assessed, it was said (p 434):

"It is a fundamental rule that an assessment for a local improvement should be apportioned among, and imposed upon, all equally standing in like relation."

It is interesting to note that in the case cited the frontage rule of apportionment was deemed open to objection under the facts, and that use of area as the basis of apportionment was proper. The Court also referred to the fact that in several cases decided by

* See CL 1948, §§ 247.415–247.417 (Stat Ann §§ 9.711–9.713), repealed by PA 1958, No 77.—REPORTER.

the courts it had been stated, in substance, that future probable advantages may be considered in assessing benefits, and that incidental benefits may be taken into account as well as those directly received by the land. The general proposition that the levy of an assessment that is not made in accordance with benefits cannot be sustained is supported by *Wood v. Village of Rockwood,* 328 Mich 507, 511, the Court citing with approval the prior decisions in *Panfil v. City of Detroit,* 246 Mich 149, 156, and *I. H. Gingrich & Sons v. City of Grand Rapids, supra.*

Counsel for defendant have directed attention to *St. Joseph Township v. Municipal Finance Commission,* 351 Mich 524. In that case the plaintiff township made application for permission to issue special assessment bonds for the purpose of establishing a township fire department. The defendant commission denied the request and plaintiff appealed in the nature of mandamus. The township undertook its project in accordance with PA 1951, No 33, as amended by PA 1955, No 221 (CLS 1956, § 41.801 *et seq.* [Stat Ann 1959 Cum Supp § 5.2640(1) *et seq.*]). Acting pursuant to the statute the township board by resolution submitted to the voters of the township the question of creating a special assessment district comprising all the real property in said township, to the end that a special annual assessment for a 5-year period might be levied to cover the expenses of the project. The proposal received an affirmative vote and the application for approval of the bond issue followed. The statute in question expressly authorized the levying of the assessment on the basis of property valuations. Under the peculiar situation presented this Court determined that such method of assessment properly measured the benefits to be received, by each parcel of property within the district, by way of fire protection. Obviously the purpose in establishing a fire department was to protect

all of the property within the township, and the benefits derived therefrom were reasonably apportioned on the basis indicated. In reaching such conclusion, it was said (p 533):

"We by no means desire to be understood as holding that local assessments based on valuation would be uniformly upheld. It is an essential of a special assessment that the improvement concerned should be of value to the property assessed in reasonable relationship to the assessment."

The situation in the *St. Joseph Township Case* differs quite materially from that in the controversy now before us. The improvement here involved is not primarily one for the protection of property but is designed to benefit the city as a whole, and the property within the assessment district specially, by promoting the use and enjoyment thereof and enhancing its value. Under such circumstances it would appear that, under the general principles recognized and applied by this Court in prior decisions, basing an assessment on assessed values on the assumption that such method reflects benefits to be received by each parcel assessed may not be considered to be a fair and equitable apportionment. See, also, *Thomas* v. *Gain,* 35 Mich 155 (24 Am Rep 535); *Cote* v. *Village of Highland Park,* 173 Mich 201; *Gast Realty & Investment Company* v. *Schneider Granite Company,* 240 US 55 (36 S Ct 254, 60 L ed 523).

We are not concerned in this case with questions that might be involved in the event that a public improvement is effectuated under legislation expressly authorizing the cost to be assessed on the basis of area, frontage, value for tax purposes, or other fixed method. The only assessment that can properly be made under statutory and charter provisions applicable here must rest on the foundation of the benefits received by the property affected. In 48 Am Jur,

Special or Local Assessments, § 63, p 618, the principles that must be observed are indicated in the following language:

"The requirement that the value of the benefits shall be assessed means that the assessors shall, from their knowledge, experience, observation, and judgment, make a fair and just estimate of the benefit which each particular piece of property will receive by reason of the improvement. An assessment proportional to the benefit, and not to the market value or any other test, is required by a statute providing that the jury shall assess against each parcel of land benefited 'its proportional part of' the whole sum to be assessed. The rule or standard of assessment sufficient to satisfy the constitutional guaranty of due process of law is furnished by a statute which, as interpreted by the supreme court of the State, provides that a municipal council may assess the whole, or such part as it may deem just, of the cost of a local improvement, upon such lands in the vicinity thereof as are benefited thereby, and limits the amount of the assessment upon each lot to the amount of benefits. A resolution that the common council fix and determine that a specified district is benefited by the opening of a certain street, and that there be assessed and levied upon the real estate therein included a certain amount, in proportion, as near as may be, to the advantage which each lot or parcel is deemed to acquire by the improvement, is in substantial conformity to a statute which in effect provides that the common council may assess upon such district as it deems benefited the whole or a part of the cost of the improvement, in proportion, as nearly as may be, to the advantage which each lot derives, and limits the assessment on any lot to the benefits received."

In 63 CJS, Municipal Corporations, § 1424, pp 1213, 1214, it is said:

"Assessments to defray the cost of local improvements may be apportioned according to the benefits

conferred on the property assessed; and they must be so apportioned where apportionment according to this method is required by statute or charter; but, where a charter is adopted under a home-rule act, a section thereof relating to assessments is not unconstitutional and void because it does not provide that assessments must be made in proportion to benefits.

"Where this method of assessment is employed, assessments should be imposed equally on all property equally benefited by the improvement. On the other hand, a uniform assessment on lots may be set aside or its collection enjoined where the advantages to the lots or parcels of land vary; and the fact that lots are assessed in various percents does not show that they have not been assessed according to relative benefits. All of the factors and varying circumstances which relate to and may affect the proportionate benefits received should be taken into consideration; and the amount assessed on the various lots may properly differ according to their location. Where the lots on any street sewered are uniform in size and value and are similarly improved or unimproved, the unit plan may be a compliance with a statute requiring apportionment according to benefits; but where the properties affected vary greatly in value and area the unit plan should not be used."

The validity of an assessment for a municipal improvement, based on assessed valuation of property affected, was before the supreme court of Wisconsin in *Welch* v. *City of Oconomowoc*, 197 Wis 173 (221 NW 750). It was determined that the assessment was not based upon benefits conferred, and the court held that the statutory provisions pursuant to which the assessment was attempted were invalid for that reason. The decision was cited and followed in *Lamasco Realty Co.* v. *City of Milwaukee*, 242 Wis 357, 390 (8 NW2d 372), the court declaring, through Chief Justice Rosenberry, that:

"Where the assessment is required to be apportioned according to benefits the assessment cannot be apportioned to the abutting owners upon the basis of valuation."

In a case of this nature, consideration must be given to the purpose to be attained by the public improvement sought. In some instances a fair and equitable apportionment of the cost of the improvement on the property within a special assessment district may be accomplished by following a method not at all applicable under other circumstances. In the case at bar it is apparent that benefits may not be in proportion to assessed valuations. Two contiguous parcels may be differently valued for taxation purposes and yet be equally benefited by an improvement such as is contemplated by the defendant city. Counsel for appellants have directed attention to instances of such character in this case resulting from the method followed in levying the assessment. It is of some significance also that, while 1/2 the cost of the project apportioned to the assessment district was assessed against the properties therein on the basis of assessed valuation for 1958, it was deemed necessary to apportion the rest of the aggregate amount under a method presumably designed to bring about equality in the distribution of the burden imposed on parcels of land within the district. Such method involved factors thought to affect the value of the benefits actually received, such as area, distance from the improvements made, the location of the property within the district and city, and in some instances, apparently, the current use.

That all property within the assessment district would be benefited to some extent at least by the improvement of the business section of the city is a fair inference, but in the making of the assessment the amount charged to each parcel of land must be based on the benefits accruing thereto, determined in ac-

cordance with the general principles recognized in the cases above cited. Such is the intent of the law of the State, under which the city operates, and of the municipal charter. The commission and the city assessor were charged with the obligation of insuring a fair and equitable apportionment of the amount of the cost of the improvement to be raised within the assessment district. We conclude that the amount thereof based on assessed valuation was not assessed in accordance with the statutory and charter requirements, and for that reason it may not be sustained. As before noted, 42 parcels within the district were assessed entirely on such basis, a situation that undoubtedly affected to some extent the assessment of other parcels.

The decree entered in circuit court will be modified in such manner as to set aside the assessment, with the right on the part of the defendant municipality to substitute therefor a new assessment prepared on the basis of benefits received by each parcel of land within the assessment district, in accordance with the principles recognized in the prior decisions of this Court above cited. The case is remanded to the circuit court for entry of a decree in accordance herewith. The question being one of public concern, no costs will be allowed on this appeal.

DETHMERS, C. J., and KELLY, SMITH, EDWARDS, and SOURIS, JJ., concurred with CARR, J.

BLACK, J. (*dissenting*). "This is admittedly a case of first impression, not only in Michigan but throughout the land. No court has ever been presented with the issue of the validity of a redevelopment project[*] such as is proposed here."

---

[*] The project is resolution-entitled:

"Improvement and enlargement of automobile parking facilities, retiring of outstanding parking revenue bonds, widening of certain public streets, opening of a new public street, and development of a pedestrian mall and plazas in the central business district of the city of Royal Oak."

Such is the candid salutation of the defendant city's brief. It brings to focus the portentous nature of our decision and its impact as other mall-bent municipalities wait upon release of these opinions.

I agree, with Mr. Justice CARR, that the assessment of property for *special* benefits cannot be based upon assessed valuations and that assessments so levied should be pronounced invalid. I do not agree with his denial of applicability to this case of rules discussed and adopted in *Fluckey* v. *City of Plymouth,* 358 Mich 447. If it is to be the law, henceforth, that an aggrieved special assessee must prove a detriment as well as an absence of benefit, then I must protest the precedent. *Fluckey* does not so hold. If such were the case *Fluckey's* opinion would not bear my signature.

Whether such was necessary or not, these complaining property owners have proved a discriminatory detriment to their property rights. The levies questioned in this case are not just special assessments. Laid as they are "by the superficial area" (see *Thomas* v. *Gain,* 35 Mich 155, 159–161 [24 Am Rep 535]), they are *very* special assessments. Specially favoring one group of taxpayers over another, they would force the latter to contribute toward strengthening the former as business competitors.

In analogous fact and applicable principle, the special levy on plaintiffs' properties duplicates that which came to review in *New York Central R. Co.* v. *Detroit,* 354 Mich 637. There the plaintiff railroad was specially assessed for benefits allegedly bestowed on it by 4,300 longitudinal feet of heavy duty trackside pavement designed in manifest part to facilitate the competitive carriage of freight by motor truck. Here the properties of the respective plaintiffs have been specially assessed as "specially bene-

fited"* when the beneficial cream of the special manna is due to rain upon that area which includes and surrounds—within convenient walking distance from automobile to shop—the planned mall.

I am unable to perceive that such properties (they truly are "on the other side of the tracks") will receive any specially beneficial avails from the planned redevelopment of Royal Oak's Washington avenue business district.  To the contrary, it would seem that such development is due to decrease the value of their properties by diverting some little business and trade therefrom to the proven magnet of convenient parking of cars and "promenading the mall." It is difficult to conceive, for instance, that milady would park her car in any one of the attractively located free lots surrounding the Washington avenue mall and shopping district only to walk several blocks, away from the mall to the other side of the Grand Trunk tracks, to shop in the Main street business district where the properties of plaintiffs are situated.  Nor would she be apt to park and shop about and on the mall and then drive across the tracks for more parking and shopping in the traffic-congested Main street district, where there is no mall.  Such habits are no more, as modern shopping trends visibly tell judges when on rare occasion judges do go out in the noonday sun.

Now let us examine the facts.  Facts, after all, determine the validity or invalidity of special assessments when such assessments are challenged for want of special benefit.

The district of proposed special assessment is a square made up of 42 blocks and connecting streets of downtown Royal Oak.  The square is bounded north by Eleven Mile road (formerly First street);

---

* Royal Oak's charter authorizes the special assessment of property "specially benefited."

east by Troy street; south by Lincoln avenue; and west by West street. Extending diagonally and northwesterly through this 42-block area are the main line double-tracks of Grand Trunk Western leading from Detroit to Pontiac.* The railroad extends along the hypotenuse of a right angle triangle formed by that part of the special assessment district which lies southwesterly from the railroad right-of-way. Plaintiffs' specially assessed properties are situated on the other—northeastward—side of the right-of-way.

On the southwesterly side of the right-of-way is Royal Oak's north-south Washington avenue business district. Here the city proposes to close Washington avenue and construct the mall as I shall endeavor now to describe. The mall will utilize entire Washington avenue from Seventh street north to and beyond Fourth street. There it will terminate at the intersection of Washington avenue with the southwesterly line of the railroad right-of-way. It will include connecting plazas, formed on both sides by the complete widths of east-west Fourth, Fifth, and Sixth streets for variable distances. Around the mall, on the southwesterly side of the railroad right-of-way, the plan calls for inclusion of extensive and mall-convenient free parking areas.

On the northeasterly side of the right-of-way is Royal Oak's north-south Main street business district. On this side the city proposes to leave Main street open for local and through traffic and, as a part of the total project, plans to locate and construct like free parking areas a half block or more

---

* The railroad is a part of the Grand Trunk-Canadian National System and forms an integral division of Grand Trunk's main line between Detroit and Chicago. Its visible bisection of downtown Royal Oak into separate business districts is the principal basis of plaintiffs' complaint of discriminatory special assessment and was the subject of comment by and opinion of expert witnesses engaged by the respective parties.

from either side of Main street with 5 separated pla-
zas, each consisting of half-blocks of Second, Third,
and Fourth streets.   One only of these plazas (the
smallest) is to be adjacent to Main street.

Such is the physical plan of the combined-into-one
project.   The picture of planned assessment for spe-
cial benefits is as follows:

The total assessment, to be laid over the described
special assessment district, is $2,660,526.04.   An ad-
ditional $143,131.36 is to be contributed by the city
"at large."   The total to be specially assessed is sum-
marized in exhibit 6, appearing in the joint appendix,
as follows:

"Total assessment ........ $2,660,526.04
Total assessment levied
  against parcels lying
  east of the railroad and
  Main street ....   ....   1,225,575.13  (46.07%)
Total assessment levied
  against parcels lying
  west of the railroad and
  Main street .......... 1,434,950.91  (53.93%)"

This brings us to the specific location of plaintiffs'
properties.   All of them are in the special assess-
ment district on the northeasterly side of the rail-
road right-of-way.   Subject to 3 exceptions, desig-
nated in the joint appendix as parcels "C", "L–4",
and "L–5", plaintiffs' properties are not only north-
east of the right-of-way but are also east of the Main
street business district.

The question is whether plaintiffs have preponder-
antly proved that no benefit will accrue to their re-
spective properties on account of the resolved proj-
ect.   Persuaded principally by the physical facts of
relative location and discrimination occasioned by
mall plus an absence of traffic on one side of the rail-
road, compared with no mall plus correspondingly

added traffic on the other, I hold that they have so proved their case.

Counsel for the city themselves attest the special advantages of that which the city would bestow solely on the Washington avenue district. They say, in their brief:

"It takes no great imagination to see that an area easily accessible to pedestrian and motorist alike in safety, free from fast moving through traffic and congested local traffic with its attendant noise, fumes, and general commotion, systematically and conveniently planned and laid out, generously interspersed with large free parking areas, and beautified with landscaping and decorative malls and plazas, is to be preferred far and away over its opposite counterpart."

. This is quite true. The "opposite counterpart" is planned for the Main street district, on the other side of the tracks. That counterpart is to get the through and local traffic, the "noise," the "fumes," and "the general commotion"; whereas the Washington avenue district is to get the mall and its perfectly painted advantages.

The railroad, like it or not, is an effective separator of downtown business in Royal Oak. These are no rusty weed-grown rails of a bygone age of steam. Here is what railroad men call the "high iron" on which through rail traffic passes back and forth at high speed. Michigan's only commuter trains pass here, back and forth between Detroit and Pontiac, 10 per day. The timetable included in the joint appendix shows that all stop at Royal Oak, the passenger depot being just north of the special assessment district. The switching of freight cars, to and from the main line to the Grand Trunk freight depot (this depot is on Sixth street 1 block east of the planned mall), takes place in the approximate center of such district. All of Grand Trunk's mani-

fest freight trains, passing between Detroit and Chicago, thunder over the same rails. Each street in the district, crossing the tracks at grade between Washington avenue and Main street, is guarded by flasher signals and automatically operated traffic control gates. Here we find one of the busiest (if not the busiest) local and through railroad divisions in all Michigan. Here, too, we find the city's principal expert witness conceding that the railroad "has some detrimental effect on the area" and another of the city's expert witnesses, when questioned with respect thereto, alleging a want of knowledge of the nature and extent of rail traffic through the district.

This is not all. The closing of Washington avenue and construction of the mall will automatically increase traffic on Main street. This is conceded by the city's witnesses. On completion of the resolved project, Main street will form the only "through" north-south street in the special assessment district. Through traffic, as pointed out by counsel at oral argument, does not benefit business on either side of such "through" street. Thus Main street, provided no mall, is to assume an additional traffic burden of which Washington avenue is to be relieved. This, it seems to me, is detriment rather than benefit so far as concerns those whose properties are so located as to be a part of the Main street business district.

Looking at the exhibit maps and the testimony of the respective partisan experts, it seems clear that this plan of business redevelopment is designed primarily to make shopping specially attractive in and about the unitary area of the mall and its connected plazas. With utmost convenience and without traffic and rail dangers or delays people are due to park their cars near and around the mall and to walk in and around the adjacent stores and places of business for shopping and like purposes. Such a project benefits, yes. The shopper is convenienced and at-

tracted by comfortable ways of spending money, and the adjacent places of business do more business. But that business, so attracted, must be taken from other less attractive spots. Such is Confucius' law of competition. It affords no basis for compulsive contribution of those adversely affected, or at least those who receive no like benefit.

There is no occasion for review of applicable authorities. That was both exhaustively and divisively done in the *New York Central Case,* and again with unanimity in the *Fluckey Case.* If Cooley's test— applied in *Fluckey* (pp 453, 454)—is good, then these plaintiffs have made out a case for relief upon 4 ultimate and firmly established facts. They are:

1. The resolved project is duplicitous in nature, and so is a proper subject of separate plans, separate resolutions, and separate districts of special assessment.

2. The project contemplates one mall development only, on the southwestward side of the tracks.

3. The project contemplates relieving the mall development of annoying traffic and casting the burden thereof on the business district which is on the other side of the tracks.

4. Plaintiffs' properties, all of them, are on that other—the wrong—side of the tracks.

I would reverse and remand for entry of decree granting plaintiffs the injunctive relief they seek, observing at the same time that the longer we as chancellors avoid the dreadful drudgery of testing legislative discretion or indiscretion against disclosed facts in tax cases, just so much more will the judicial process decline in the critically focused eyes of public esteem.

Kavanagh, J., concurred with Black, J.