LEONARD CAPALDI CONTRACTING COMPANY, INC. v CITY OF
FRASER   .

1. TAXATION—REAL PROPERTY—SPECIAL ASSESSMENT—PUBLIC IM-
PROVEMENTS.

The theory of a special tax assessment for a public improvement
is that a special benefit has been conferred upon the property
assessed, over and above that conferred on the community
itself, and therefore, the landowner should be required to pay a
special tax assessment no greater than the increase in the
property's value resulting from such improvements.

2. TAXATION—REAL PROPERTY—SPECIAL ASSESSMENT—PUBLIC IM-
PROVEMENTS—CHALLENGES TO ASSESSMENTS—BURDEN OF PROOF.

A party challenging the imposition of a special tax assessment for
public improvements has the burden of proving that the as-
sessed property did not receive a benefit sufficient to justify the
imposition of the special tax assessment.

3. TAXATION—REAL PROPERTY—SPECIAL ASSESSMENT—RESIDENTIAL
USE OF LAND—PRESENT USE OF LAND—MOST PROFITABLE USE.

A special tax assessment on land should not be upheld, although
the evidence shows that a special improvement would increase
the value of the property for potential residential use in rela-
tion to the amounts of the assessment, where the landowner
proves that the present use of his land as an airport is the most
profitable use and that the land, while used as an airport,
would not receive a special benefit equivalent to the special
assessment.

Appeal from Macomb, Raymond R. Cashen, J.
Submitted March 8, 1976, at Lansing. (Docket No.
24408.) Decided July 20, 1976. Leave to appeal
denied, 398 Mich 802.

Complaint by Leonard Capaldi Contracting Com-

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 70 Am Jur 2d, Special or Local Assessments § 18 *et seq.*
[2] 70 Am Jur 2d, Special or Local Assessments § 9.

pany, Inc., and Karam Brothers, Inc. against the City of Fraser seeking the removal of parcels of land owned by plaintiffs from the special assessment tax rolls of defendant city. One parcel ordered stricken from the rolls, one ordered included. Defendant appeals, plaintiffs cross-appeal. Affirmed.

*Emil E. Cardamone,* for plaintiffs.

*Roy W. Rogensues,* for defendant.

Before: M. J. KELLY, P. J., and BRONSON and W. R. PETERSON,* JJ.

M. J. KELLY, P. J. In 1974, defendant municipality formulated a plan for the installation of sewer and water lines. The plan called for 50% of 1.2 million dollars in improvements to be paid for by the city at large, with the remaining 50% to be paid through proportionate special assessments of the benefited properties included within certain designated districts. The plaintiffs, owners of four parcels of land falling within special assessment districts, filed a complaint in Macomb County Circuit Court asking that their property be stricken from the special assessment rolls. Plaintiffs later conceded that assessments on two parcels were proper. The remaining parcels, on decision of the court, fared differently; one was stricken from the rolls, one included. The "airport parcel", specially assessed at $73,851.59, was stricken from the rolls; the "26 acre parcel", specially assessed at $7,941.64, was confirmed as included. The defendant city appealed the ruling on the airport parcel; the plaintiffs cross-appealed the ruling on the 26 acre parcel.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The airport parcel is presently in use as Mc-Kinley Airport. Plaintiffs, one a general contractor and one a residential real estate developer, claimed to have purchased the parcel for use as an airport, although they have not ruled out using the property for residential development (which potential permeates the matter). At the time of trial, there was a proposal before the defendant city council, which would rezone the airport parcel for residential use *only.* Plaintiffs purchased the property on a 4-1/2% interest land contract, for over $10,000 an acre.[1] One witness testified that two years previous to the plaintiffs' purchase of the parcel, undeveloped residential property in Fraser had a market value of $6,000 per acre. A second witness testified that the selling price was anywhere from $2,500 to $3,500 an acre.

The airport parcel includes hangars, an administrative building, two runways and two flying schools. Within the administrative building are two restrooms containing the only plumbing facilities on the parcel. The parcel had previously been assessed for a sanitary line that could be connected to the airport's plumbing. No storm sewer facilities existed to serve the airport.

The 26 acre parcel, located adjacent to the airport, was purchased on a 7% land contract for about $3,300 an acre. At time of trial, the parcel was zoned residential and plaintiffs had previously failed to obtain zoning to permit an expansion of the airport.

The municipality's purpose in establishing the special assessment districts was to complete the city's sewage and water system and to alleviate

---

[1] However, approximately 90 acres are exempt from general taxation while the airport use continues. This was established in prior litigation. It has no relevance here except perhaps to show economy of the airport operation.

certain health hazards that had arisen. Inclusion of the airport parcel was deemed essential for several reasons including its proximity to tap-in connections to the Detroit sewer system and its importance for financing.

The trial court properly relied on the leading special assessment case of *Fluckey v City of Plymouth,* 358 Mich 447; 100 NW2d 486 (1960). The Court there stated:

"[T]he theory of the special assessment is that a special benefit has been conferred, over and above that conferred upon the community itself. Cooley's exposition of the problem makes clear the theory of the special assessment:

" 'The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing to the persons taxed, beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay.' " 358 Mich at 453–454, citing 2 Cooley, Taxation (3d Ed) pp 1153–1154.

The burden of proving that the assessed properties do not receive a benefit sufficient to justify the imposition of the assessment rests with the party

challenging the assessment. *Graham v City of Saginaw,* 317 Mich 427, 435; 27 NW2d 42 (1947).

The trial judge determined that plaintiffs had proven that the airport parcel would not receive a special benefit equivalent to the special assessment. He reached this determination by noting that the parcel's present use as an airport was the most profitable use. The judge found that because the airport would not benefit from the sewer and drainage system, the property could not be assessed.

Appellant says that the trial court's analysis slightly misses the mark. It urges that one step further is required. It says that although the parcel in its present most profitable use would not be specially benefited, "that the benefit of any given public project is measured by its available potential, not the immediate use to which it can be put". *Stybel Plumbing, Inc v Oak Park,* 40 Mich App 108, 110; 198 NW2d 782 (1972). Further, that in *Crampton v City of Royal Oak,* 362 Mich 503, 515–518; 108 NW2d 16 (1961), the "potential use" analysis was approved quoting from *Foren v City of Royal Oak,* 342 Mich 451, 456; 70 NW2d 692 (1955):

"The use to which plaintiffs may put their properties now or may wish to put them in the future is not controlling of the question of resulting benefits or validity of the assessment." 362 Mich at 517.

We trace back the citation from *Foren* because it is immediately obvious on reading the opinion that the Supreme Court concluded that the plaintiff's properties were in fact benefited. *Foren* cites *Powers v The City of Grand Rapids,* 98 Mich 393; 57 NW 250 (1894), which involved a plaintiff who owned property at the terminus of a bridge and

was assessed when the street was paved up to the bridge. It was his claim that his property wasn't benefited because he didn't use the street; he used the river for access to his property. But again, a reading of that opinion immediately gives the impression that the *Powers* Court was of the opinion that the plaintiff's property was benefited. It appears to us that the *Powers* plaintiff and the *Foren* plaintiffs decided to stubbornly and unrealistically refuse to put the land in harmony with the improvements. Such conduct was unreasonable and could not be held to obstruct the assessing authority:

"The right to assess lands for local improvements does not depend upon the use to which the owner may choose to put such land, or whether he may see fit to put it to any use." *Powers, supra,* at 396.

We agree completely with the holdings and reasoning in *Powers* and *Foren.* But we refuse to extend that ruling to what would amount to a logical absurdity. We are urged to hold that although residential use by plaintiffs here might devaluate their investment to as low as one-third of the acreage value of the land in its present use as an airport, that if the assessment increases the value of the premises for residential use in relation to the amount of the assessment, that it must be upheld. We decline to do so.

This would be a more plausible argument if the relationship between the value of the land in the alternative uses was closer. The trial court found "the land cost is much too great when added to cite [sic] improvement costs to build a residential home which can be sold on the market. The area will not sustain acreage costs for residential housing much in excess of $3,000 to $3,500". Compare

this to the more than $10,000 paid for the acreage and the ensuing inflation after the purchase.

Were we to hold that the assessment would stand or fall on its relationship to increase of value for residential purposes, we would put in the hands of assessing authorities a weapon particularly adaptable for abuse. The assessing authorities could use such a claimed "potential use" to accomplish what zoning or condemnation proceedings could not readily achieve.[2] By requiring a landowner to disprove that his land in every potential use receives inadequate special benefits anent the special assessment we would effectively take the landowner out of the equation. Wouldn't sewer and water and paving always be a potential advantage to real property in some conceivable future use? In the present case, the municipality could force plaintiffs to make a Hobson's choice: operate the airport, but pay for an unnecessary sewer and drainage system, or develop the land as residential land, but suffer a loss on their investment due to the lower profitability on the land in a residential use.

As to the 26-acre parcel, our review of the record convinces us that the court properly upheld the special assessment. The record indicates that the parcel in its present use is specially benefited.

Affirmed.

---

[2] Of course, if the municipality's purpose in levying a special assessment is fraudulent, arbitrary or capricious, the special assessment will fall on those bases. *See Crampton v City of Royal Oak,* 362 Mich 503, 516; 108 NW2d 16 (1961).